THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ALEX CAMPBELL, Defendant-Appellant.

First District (6th Division)   No. 1—88—0819

Opinion filed June 1, 1990.

Gary W. Adair, Ltd., of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, James E. Fitzgerald, and Jeanne A. Morrow, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RAKOWSKI delivered the opinion of the court:

Following a jury trial defendant Alex Campbell was convicted of attempted murder (Ill. Rev. Stat. 1987, ch. 38, pars. 8—4, 9—1), home invasion (Ill. Rev. Stat. 1987, ch. 38, par. 12—11(a)), aggravated battery (Ill. Rev. Stat. 1987, ch. 38, par. 12—4), and armed violence (Ill. Rev. Stat. 1987, ch. 38, par. 33A—2). He was acquitted of aggravated unlawful restraint (Ill. Rev. Stat. 1987, ch. 38, par. 10—3.1(a)) and sentenced to concurrent sentences of five years on the aggravated battery and 20 years each on the other charges.

On appeal defendant contends that: (1) he was denied due process because the State failed to disclose exculpatory statements; (2) he was denied a fair trial because the court allowed improper rebuttal to be introduced and failed to issue limiting instructions; (3) he was denied a fair trial because of the State's improper closing argument; (4) the evidence was not sufficient to prove his guilt beyond a reasonable doubt; and (5) the sentences were excessive. We affirm.

The facts are these: Campbell had lived at 3104 West Douglas, Chicago, Illinois, with Genise Waters, his common-law wife. Also living in the apartment were Lynette Marshall and Vera Waters, who were sisters of Genise, and others. Shortly before August 30, 1986, Campbell separated from Genise Waters and moved. On that date, he entered the apartment with a gun. Shots were fired, and Lynette Marshall was hit three times.

Vera Waters testified for the State that Campbell had come to the door three to five times that day, but she had refused to let him in. At about 2:30 p.m., she heard a knock at the door. When she asked who was there, her 12-year-old nephew responded. She asked if he were alone and he said "yes." When she opened the door, the nephew was standing there with Campbell three feet behind. Campbell pushed past her and the boy and went into the apartment. According to Waters, he then fired a shot at Lynette Marshall, jerked the phone out of the wall and headed in the direction of the kitchen. Marshall ran into another room, and Vera Waters ran outside the apartment.

Lynette Marshall testified for the State and confirmed that Campbell fired a shot at her. She did not leave the apartment with her sister but went into a bedroom. She saw Campbell grab Genise Waters with his left hand and hold a gun to her head with his right. At that point Genise Waters said, "Don't shoot my sister." According to Marshall, Campbell then shot her three times at close range.

Both Campbell and Genise Waters testified for the defense. Waters stated that she and Campbell had talked in the hallway outside the apartment earlier in the day on August 30, and she had invited

him to return. Both Campbell and Waters testified that the shooting was an accident. Campbell had threatened to shoot himself and aimed the gun at his own leg. According to both witnesses, while Genise Waters tried to deflect Campbell's gun, it discharged three times and hit Marshall with all three shots.

On cross-examination, Waters admitted talking to police officer Charles Williams on the day of the shooting. According to her testimony, she told Williams that Campbell had held a gun to her head but she denied telling Williams that defendant shot Marshall once, then twice more as Marshall moved away. Waters also testified about a conversation during the week of trial with Assistant State's Attorney Neal Goodfriend (ASA Goodfriend) in the presence of Officer Williams and Assistant State's Attorney Dawn Overend (ASA Overend). Waters admitted that, in this discussion, she had not told the State about holding Campbell's arm as he shot Marshall. She did tell the assistant State's Attorney that Marshall was about four feet away when Campbell shot her.

The State recalled Officer Williams as a rebuttal witness. Williams testified that Genise Waters had told him Marshall was shot the first time while she was trying to help Waters and shot the second and third times while she was trying to escape. The court overruled defense objections to this testimony, holding that it was proper rebuttal. Then Officer Williams described the conversation between Waters and ASA Goodfriend. In that discussion Waters had not mentioned how she grabbed Campbell's arm in her attempt to prevent defendant from hurting himself. He also stated that Waters said her sister was about four feet from Campbell when she was shot. The defendant objected once during this segment of Williams' testimony on the grounds that a question was leading. That objection was overruled.

During closing argument, the State summarized numerous facts which had been brought out in the testimony of Campbell, Marshall, Vera Waters, Genise Waters, Officer Williams, and others.

The State also discussed the elements it had to prove for the attempted murder charge. The prosecutor began by telling the jury that the judge would instruct them on the law. He continued by saying that the prosecution must prove there was a "substantial step" toward the commission of the crime and that the defendant "wished to kill" the victim. He then discussed the steps taken by Campbell and asserted that Campbell showed "intent when he pointed that gun at Lynette Marshall on that date." The defendant did not object during this discussion.

The defense closing was very brief. After thanking the jury, de-

fense counsel told them:

> "I am sure that when the Court instructs you and sends you into the jury room to deliberate that *** you will read the instructions carefully. You will dissect them and consider what you have been told by the Court by way of deliberation [*sic*], and that upon the conclusion of your deliberations, you will conclude that the State had not proved Alex Campbell guilty of these charges."

The prosecution opened its rebuttal argument by saying, "Counsel stated that we haven't proven him guilty of these charges," and proceeded to outline the evidence. Defendant objected that the State was going into new questions like the credibility of witnesses. The objection was overruled.

The prosecutor then began talking about what "everyone is taught, at least in my home." Defendant objected. The court told the jury to disregard any comments about the "personal accomplishments" of the attorney. The prosector continued: "We are all brought up that human life is the most valuable thing we can have, and he disregarded her life on that day. He disregarded many people's, many individuals' lives in that apartment." The defendant made no further objection, and the prosecutor went on to outline evidence.

At the end of the trial, the parties agreed on jury instructions. These did not include Illinois Pattern Jury Instructions, Criminal, No. 3.11 (2d ed. 1981) (hereinafter IPI Criminal 2d), the instruction for impeachment by prior inconsistent statements.

Defendant filed a motion for a new trial. He alleged that Genise Waters talked to the prosecution during the week of the trial, had altered her original story in a way favorable to Campbell, and that the State did not disclose any such conversation to defendant. Campbell also presented an affidavit by Lynette Marshall, who stated that she could not really remember what had happened August 30, 1986, because she had been nervous and afraid. In her affidavit, she asserted that she had informed ASA Goodfriend shortly before trial that she did not want to testify and further that he had threatened her with perjury charges if she did not testify consistent with the statement she had made while in the hospital after her injuries. She alleged ASA Goodfriend left her a copy of the statement and "told her to read it and testify to the same thing."

At the hearing on defendant's motion, Marshall stated that she had told the prosecutors she was unstable, nervous, and not prepared to go on with the case. She testified that ASA Goodfriend warned her if she did not testify at trial that "you will be prosecuted or you will

be perjuring yourself." She also reported that she was shown a written copy of her previous statement about events the day she was shot.

At the hearing on defendant's motion, ASA Overend stated that Genise Waters had been hostile and uncooperative. She refused to come to the office for an interview. However, when the prosecutors did talk to Waters on one of the court days, she told prosecutors that "the defendant had shot the gun, that he—that he had come into the house with a gun, that he had pointed the gun at her, etc." ASA Overend also testified about two conversations between Marshall and members of the State's Attorney's staff in the days before trial. On both occasions, Marshall expressed her fear of testifying. She did not, however, deny anything she had said before or claim she had any trouble remembering. Furthermore, no one gave her any written material to help her prepare for court.

ASA Goodfriend testified that when he talked to Genise Waters she refused to answer some questions and indicated she did not want to testify. He also denied ever telling Lynette Marshall that she would be prosecuted for perjury if she did not testify.

The court denied the motion for a new trial based on all of defendant's claims, including Marshall's testimony. The judge further stated that Marshall had been credible at trial but not at the hearing.

I

Campbell claims that he was denied due process when the prosecution failed to disclose a conversation between Genise Waters and ASAs Goodfriend and Overend during which Waters said that she could not recall details of earlier incriminating statements she had made to the police. Campbell alleges further that the prosecution failed to disclose a conversation with Lynette Marshall in which she claimed she was afraid to testify and suffered from memory loss.

■ When prosecutors suppress evidence that is material to guilt or punishment and is requested by the defense, that suppression is a violation of due process. (*Brady v. Maryland* (1963), 373 U.S. 83, 87, 10 L. Ed. 2d 215, 218, 83 S. Ct. 1194, 1196-97.) To prove a *Brady* violation, a defendant must show that evidence was favorable to the defense, material to guilt or punishment, and requested by the defense. *People v. Post* (1982), 109 Ill. App. 3d 482, 489, 440 N.E.2d 631, 637.

■ Campbell alleges first that the prosecution withheld exculpatory statements in which Genise Waters changed her story from the one she had originally given in a statement to the police. According to

Campbell, Genise Waters spoke with prosecutors on the first day of trial and said "she didn't remember telling [the police] that [Campbell] pointed a gun to her and threatened her." In other words, Waters had said she could not remember what she told the police, not that any particular statements were untrue. At the hearing, ASAs Overend and Goodfriend testified that Waters had been hostile and uncooperative in her interviews with the State before trial. However, she had never denied her original story inculpating Campbell.

Second, Campbell claims that the prosecutors withheld pretrial conversations with Lynette Marshall in which she told them that she could not remember the events of the shooting and did not want to testify. Campbell presented both Marshall's post-trial affidavit and her testimony to that effect. At the hearing, however, ASAs Overend and Goodfriend testified that Marshall told the prosecutors she was afraid to testify but never denied the truth of her story about the shooting. The judge weighed the credibility of the witnesses and held that Marshall had testified to the truth at the trial.

In sum, as far as the State knew, the first exculpatory statement made by Waters was made when she testified for the defense at trial. The first such statement made by Marshall was not made until after the trial, and then to the defense. Therefore, the State had nothing to disclose.

## II

Campbell claims the court deprived him of a fair trial by allowing the rebuttal testimony of Officer Williams and by failing to give limiting instructions.

Inconsistent out-of-court statements made by a witness can be used to impeach the witness' in-court testimony, but cannot be used as substantive evidence. (*People v. Gant* (1974), 58 Ill. 2d 178, 183-85, 317 N.E.2d 564, 567-68.) Some of defendant's argument on this issue relates to statements relevant to the charge of aggravated unlawful restraint. Since defendant was acquitted of this offense, we will not discuss those statements.

Campbell argues that the State, under the guise of impeaching Genise Waters, introduced inconsistent out-of-court statements which she had already admitted on cross-examination, specifically that she had failed to tell the police that she was holding Campbell's arm as he shot Marshall and that Marshall was only four feet away. Second, Campbell asserts that the court did not include IPI Criminal 2d No. 3.11, the pattern jury instruction for impeachment by prior inconsistent statement.

■ Defendant waived the issue of improper impeachment by failing to make a contemporaneous objection. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130.) Defendant did object to a leading question, but that objection was overruled. Defendant also waived the jury-instructions issue because the defense did not object to the instructions at trial or tender any on the topic of impeachment. (*People v. Glass* (1984), 128 Ill. App. 3d 869, 873, 471 N.E.2d 597, 601.) Furthermore, since the testimony by Williams duplicates information Genise Waters had already offered in her own self-impeachment, it is cumulative of properly admitted evidence and, thus, harmless. *People v. Wilkerson* (1981), 87 Ill. 2d 151, 157, 429 N.E.2d 526, 528.

### III

Defendant alleges that he was deprived of a fair trial because the prosecutor made improper remarks at closing.

■ In closing, prosecutors have wide latitude to comment on evidence and draw reasonable inferences therefrom, or reply to comments made by defense counsel and, absent a clear abuse of discretion, a court's rulings on the propriety of these comments will not be disturbed on review. (*People v. Rockman* (1986), 144 Ill. App. 3d 801, 813, 494 N.E.2d 688, 696.) Furthermore, if a defendant does not make a timely objection at trial, he waives the issue for review unless the comments were so inflammatory that they deprived the defendant of a fair trial or threatened to deteriorate the judicial process. (*People v. Albanese* (1984), 104 Ill. 2d 504, 518, 473 N.E.2d 1246, 1251.) Finally, when prosecutors exceed the bounds of latitude, then, as a rule, the court's action in sustaining objections and instructing the jury to disregard improper statements is a sufficient cure for any prejudice introduced by improper argument. *People v. Baptist* (1979), 76 Ill. 2d 19, 30, 389 N.E.2d 1200, 1206.

Defendant here contends that the cumulative effect of errors in the State's closing argument, considered in the light of the other issues presented by the record, amounts to reversible error. To support this contention, Campbell cites cases and alleges error in five areas of the State's closing:

(1) The State misstated three pieces of evidence (relying on *Albanese* (104 Ill. 2d at 519, 473 N.E.2d at 1252)).

■ We hold that these statements either properly summarized evidence for the jury or amounted, at most, to trivial slips of the tongue. In addition, one statement related to the charge of aggravated unlawful restraint for which Campbell was acquitted, and

Campbell waived the other two misstatements for appeal by not objecting at trial.

(2) The State misstated the requisite mental state for a conviction on attempted murder and, thus, committed error by making the prosecution's burden seem lighter (relying on *People v. Weinstein* (1966), 35 Ill. 2d 467, 470, 220 N.E.2d 432, 434).

■ The defense argues that the *Weinstein* case prohibits the prosecution from misstating the proper burden for criminal cases. In that case, the prosecutor had committed reversible error because he repeatedly asserted that it was the defendant's burden to create reasonable doubt. *Weinstein*, 35 Ill. 2d at 470, 220 N.E.2d at 434.

In the case here, the State told the jury it had to prove attempted murder by showing Campbell had taken a substantial step toward killing and "wished to kill" Marshall. We hold that the phrase "wished to kill" when used only once in the context of a discussion of intent and followed by proper jury instructions is harmless error.

(3) The State's rebuttal argument reviewed the evidence on all charges and thereby introduced new material beyond that presented by defendant's closing. Campbell does not cite cases to support why this is error; but the State asserts that it may properly reply to comments made by the defense (relying on *Rockman*, 144 Ill. App. 3d at 813, 494 N.E.2d at 696).

■ In its closing, the defense did not review the evidence but simply told the jury "you will conclude that the State [has] not proved Alex Campbell guilty of these charges." The State opened its rebuttal by saying, "Counsel stated that we haven't proven him guilty of these charges," and proceeded to outline the evidence. Campbell objected that the State was going beyond the defense argument, particularly by discussing the credibility of witnesses, which had not been mentioned previously in either closing. The court ruled that "[w]hen you get up and say that the People have not proven him guilty of these charges he can go into each and every charge to show how they have proven him guilty of those charges."

We agree with the trial court.

(4) The State improperly made references to the value of human life which served only to inflame the passions of the jury (relying on *People v. Tiller* (1982), 94 Ill. 2d 303, 321, 447 N.E.2d 174, 183).

The prosecutor made a remark about what "everyone is taught, at least in my home." When defendant objected, the court instructed the jury to disregard comments about the "personal accomplishments" of the attorney. The attorney continued by saying, "[W]e are all brought up that human life is the most valuable thing we can

have," and went on to describe Campbell's disregard for the lives of people in the apartment on the day of the shooting. Defendant did not object.

■ We hold that the first comment was cured by the judge's instruction to the jury and the second was waived by defendant's failure to object at trial. Furthermore, neither deprived defendant of a fair trial or threatened to deteriorate the judicial process.

(5) The prosecutor improperly went beyond the evidence and stated his own opinion about how, in spite of Genise Waters' inconsistent statements, "we all know" Campbell was guilty on the charge of aggravated unlawful restraint (relying on *People v. Rothe* (1934), 358 Ill. 52, 56, 192 N.E. 777, 779).

The jury acquitted Campbell on that charge. Furthermore, the statement itself was harmless error.

## IV

Campbell asserts that the State failed to prove the charges against him beyond a reasonable doubt, especially in light of the fact that a key State witness "recanted" her testimony after the trial.

He argues that the State's proof for the offenses of attempted murder, aggravated battery, and armed violence rests principally on the testimony of Lynette Marshall. At trial, Marshall testified that Campbell shot her three times at close range. Campbell admits that he shot Marshall but claims the shooting was accidental. The testimony of Genise Waters further supports defendant's version.

■ With respect to such an issue, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis omitted.) (*People v. Young* (1989), 128 Ill. 2d 1, 49, 538 N.E.2d 461, 472, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.) Then, " '[o]nce a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.' "(Emphasis in original.) (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277, quoting *Jackson*, 443 U.S. at 319, 61 L. Ed. 2d at 573, 99 S. Ct. at 2789.) Further, discrepancies in the testimony of witnesses go to the issue of credibility, which must be judged by the trier of fact. *People v. Thomas* (1981), 96 Ill. App. 3d 443, 450, 421 N.E.2d 357, 363.

■ The jury heard the case and returned a verdict on August

26, 1987. Lynette Marshall filed an affidavit on February 18, 1988, and testified on March 4, at the hearing on a motion for a new trial. Marshall stated that she could not remember the details of the shooting, had told ASA Goodfriend this, and had been forced to testify anyway. Then ASAs Overend and Goodfriend testified that before the trial Marshall had expressed her fear of testifying, but had not denied any statements made earlier or claim she could not remember her original story.

The judge denied defendant's motion for a new trial. In commenting on Marshall's testimony at the hearing, he stated that "she was not convincing today, and I do not believe her."

The jury had found Marshall to be a credible witness at the trial. The testimony of Marshall and Vera Waters would allow a rational trier of fact to find Campbell guilty of attempted murder, aggravated battery, and armed violence beyond a reasonable doubt.

Campbell additionally contends that the State failed to prove him guilty of home invasion beyond a reasonable doubt because his common-life wife gave him permission to come over to the apartment.

■■■ Under Illinois statute, a person who is not a peace officer commits home invasion "when without authority he or she knowingly enters the dwelling place of another when he or she knows or has reason to know that one or more persons is present" and he or she either (1) uses or threatens force with a deadly weapon or (2) intentionally causes injury. (Ill. Rev. Stat. 1985, ch. 38, par. 12—11.) The gravamen of this offense is unauthorized entry. (*People v. Fox* (1983), 114 Ill. App. 3d 593, 597, 449 N.E.2d 261, 264.) Even when the defendant initially receives authority for a visit, that person can commit home invasion by exceeding the authority, for example, by threatening residents with a gun or by inviting criminals to enter. See, *e.g., People v. Hudson* (1983), 113 Ill. App. 3d 1041, 1044-45, 448 N.E.2d 178, 181; *People v. Sanders* (1984), 129 Ill. App. 3d 552, 560-61, 472 N.E.2d 1156, 1162-63.

Campbell maintains that he had permission to enter the apartment and, therefore, the State has not proved an essential element of the charge of home invasion. According to his view of the evidence, his common-law wife Genise Waters invited him. When he arrived, Vera Waters allowed him to enter.

■■■ The facts, however, show that Vera Waters opened the door to admit her 12-year-old nephew and did this only after the nephew had told her he was alone. When she opened the door, Waters discovered the defendant standing behind the boy. Campbell pushed past Waters into the apartment, where he fired a shot at Marshall.

These facts would allow a rational trier of fact to conclude beyond a reasonable doubt that Campbell entered without the permission of the person who opened the door and, even if he had permission from his common-law wife, he exceeded his authority right after he entered by firing his gun at Marshall.

## V

Finally, Campbell asserts that a sentence of 20 years was excessive for a first offender given his good record and the circumstances of his offense.

Under Illinois law, Class X felonies carry a sentence of not less than 6 nor more than 30 years and Class 3 felonies carry a sentence of not less than two nor more than five years. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(3).) A reviewing court has the power to reduce sentences under Supreme Court Rule 615(b)(4), but should not alter a sentence on review unless the trial court has abused its discretion. 107 Ill. 2d R. 615(b)(4); *People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882, 883.

██ Campbell argues that he should have received a shorter sentence. He presented childhood problems, including an abusive, alcoholic father, who deserted him, as reasons why he did not act properly on the day he shot Marshall. He pointed to his good record in the past and his present rehabilitative potential. He stated that he was only trying to convince his wife she should return to him and bring their children. The State stressed the violence which Campbell committed on a day when children had assembled for a birthday party. The prosecutor noted that over 10 children were in the apartment when the defendant began to fire his gun. The court reviewed the presentence investigation and referred to these factors in mitigation. The court also stated that Campbell chose to commit "serious, very violent acts that are the subject matters in this case."

We hold that, under the circumstances, sentences of 20 years for the Class X felonies and five years for the battery, all concurrent, are not an abuse of discretion.

For these reasons, we affirm the judgment of the circuit court of Cook County. As part of our judgment, we grant the State's request and assess defendant $50 as costs for this appeal and $25 as costs for oral argument.

Judgment affirmed.

McNAMARA and EGAN, JJ., concur.