THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CYNTHIA HARRIS, Defendant-Appellant.

First District (1st Division)   No. 1—89—1068

Opinion filed April 6, 1992.

Randolph N. Stone, Public Defender, of Chicago (Thomas M. Donnelly, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Jillian Cerone-Marisie, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

A jury convicted defendant Cynthia Harris of murdering Leroy Williams. The court sentenced defendant to 20 years' imprisonment. Defendant filed this appeal, contending that the State's comments during closing argument were prejudicial, not harmless, and that the trial court erred in denying defendant's motion for a mistrial. Defendant also contends that she was not proved guilty of murder beyond a reasonable doubt because the State did not disprove her theory of self-defense, and therefore, her conviction must be reversed.

On July 12, 1987, at approximately 8 p.m., Williams and his friend Tyrone Franklin began drinking beer. At about 9:30 p.m. that evening, Williams, Franklin and a man called "Ed" went to defendant's address. Franklin and defendant were lovers. Franklin testified that defendant was sitting on the front steps of the home. Franklin asked defendant whether she had ever touched Williams' penis. Defendant responded that it was none of his business. Franklin struck defendant in the face. Dionne Beathea witnessed this and approached Franklin. Beathea told Franklin that he should not do that and pushed him. Franklin then struck Beathea. After seeing these confrontations, Williams ran over to Franklin, restrained him and put Franklin into his van. Franklin testified that he heard defendant tell her daughter, Elverine Jenkins, to "get her my shit."

Elverine testified that she knew what her mother meant by the phrase "my shit" because of past references. Elverine went into the home, returned with a 12-inch knife and handed it to her mother. Beathea had also retreated to her home and returned with a seven-

inch knife. Ed, who was sitting in the van, yelled out "[t]hem bitches are coming out with knives." At this point Ed and Franklin were in the van with the windows rolled up.

Beathea testified that Williams was standing by the van on the driver's side and yelled, "Get away from my van." Beathea responded, "Okay, I'm going to get away from you're [*sic*] van."

What transpired at this point is in dispute. Witnesses for the State testified that defendant ran around the back of the van and up behind Williams. Williams had grabbed what the State's witnesses described as a leg off of a child's chair or play table. Williams was getting into the van, when defendant stabbed him in the back of his left shoulder. Then, Williams swung his rod at defendant, missed her but struck Beathea in the back left side of her head. Beathea fell to the ground, holding her head. Defendant dropped her knife and knelt down beside her. Franklin and Ed pulled Williams into the van and drove him to the hospital. Beathea was taken to the same hospital, but received no treatment for her head injury. While at the hospital, Beathea heard that Williams was dead and that the rumor was that she had killed him. Beathea testified that she called defendant and told her what she had heard at the hospital. Beathea testified that defendant responded, "I only stabbed him once."

Elverine testified on behalf of her mother. Elverine stated that first Williams hit Beathea in the head with what she described as a pipe, and then swung at defendant but missed her. According to Elverine, defendant then stabbed Williams. Assistant State's Attorney Elizabeth Rivera testified, however, that the morning after the stabbing, Elverine told her that when she saw the people arguing by the van, she got scared and went inside the home. When she came back outside, Elverine claimed to have seen defendant holding Beathea, who had a knife dangling from her hand, and another knife with blood on it was lying by defendant on the ground. Rivera testified that she wrote a summary of what Elverine had told her. After reading the summary, Elverine made changes, initialed the changes and signed the completed three-page report. Rivera testified that Elverine stated that she had told her everything she saw and knew. Elverine testified at trial that she could not remember at trial if she told Rivera that she saw Williams hit Beathea and that she saw Williams swing at defendant.

Next, Detective Dennis Dwyer testified that after talking to a man named Michael Wright at the hospital, he went to 4129 South Ellis to defendant's second-floor apartment at approximately 1:30 a.m. Kevin Eskridge answered the door. Dwyer identified himself and

stated that he was looking for defendant. Dwyer was led into the living room, where three other people identified themselves as James Bailey, Tondy Kelly and Tracy Kelly. Eskridge told Dwyer that defendant had gone to visit an aunt. Dwyer went to the address Eskridge had given him, but defendant was not there. At about 7 a.m., Dwyer returned to 4129 South Ellis. Defendant's uncle answered the door and took Dwyer into a bedroom where defendant was asleep on the floor. Dwyer recognized her as being the woman that had earlier identified herself as Tracy Kelly.

Police officer David Hill spoke with Franklin at the hospital. Franklin informed Hill that defendant witnessed and possibly was responsible for the stabbing. Hill drove to defendant's home, but did not find her there. At approximately 7 a.m. on July 13, Hill picked up Franklin, and they went to defendant's home. As defendant was coming out of her home with Dwyer, Franklin identified her as the person who had stabbed Williams.

Dr. Shaku Teas, an assistant medical examiner, performed an autopsy on Williams. Teas testified that a stab wound to the back caused Williams' death. The toxicology report indicated that alcohol was found in the victim's blood.

After hearing the evidence and receiving instructions, the jury retired to deliberate. The jury returned a verdict of guilty of murder. The court sentenced defendant to 20 years' imprisonment.

Defendant contends that the trial court erred in denying her motion for a mistrial based on the State's comment made during rebuttal closing argument that defendant had asked her daughter "to perjure herself." During closing argument, the State pointed out how Elverine's testimony was impeached. The State argued that Elverine "had two years to think about what she has said and what that could cost her mom." In response, defense counsel argued, "What the State is attempting to do is impeach Elverine Jenkins by omission, not by what she did say but what she didn't say." The State rebutted:

> "[Y]ou heard from Elverine Jenkins, the defendant's daughter from this witness stand here and you heard how Elverine was dragged into this case. She was dragged into the case by one and only one person and that is the defendant over here. She was dragged into this case back in June of '87 when she called to her and asked her to get her knife ***.
>
> * * *
>
> If you are going to blame anyone, do not blame the child. Blame Cynthia Harris for bringing her in like that. Blame the defendant for dragging her in here, putting her on that witness

stand and *asking her to perjure herself.* Do not blame the child." (Emphasis added.)

Immediately thereafter, defense counsel objected. The trial court sustained the objection and instructed the jury to disregard the statement.

■ Although the trial court sustained the objection and the jury was instructed to disregard the accusation, these attempts to cure the prejudice of this statement were insufficient to remove the taint of this allegation. It is necessary to note that the accusation of suborning perjury was made during rebuttal closing argument; thus, defendant had no opportunity to respond to that charge. The statement also implicitly charged defendant of corrupting her child. During rebuttal closing argument, the State actually requested that the jury "[b]lame Cynthia Harris for bringing [Elverine] in [to court]." This argument and the context in which it was made was inflammatory because it implies that defendant forced her daughter not only to testify, but to testify in a certain manner. We cannot agree with the State that the remark that defendant suborned perjury, a crime separate from that which the State had already charged defendant, was invited by defense counsel's argument that the State was attempting to impeach Elverine not by what she said, but by what she did not say. The "perjury" argument, clearly, was made in order to inflame the jury and prejudice it against defendant. *People v. Estes* (1984), 127 Ill. App. 3d 642, 649, 469 N.E.2d 275, 282.

■ Defendant also contends that the State's comments that defendant "admits to that murder," that "murder means nothing to someone in this courtroom," and appealed to "[t]hose of you who still have decency murder means something" were prejudicial, thus denying her right to a fair trial. Generally, in order to preserve an issue for appellate review, a defendant must make a contemporaneous objection at trial and include the objection in written post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 187, 522 N.E.2d 1124, 1130.) Here, defendant failed to object to the remarks during trial and also failed to include the objections in her post-trial motion. The plain error rule, however, may be invoked when the evidence at trial is closely balanced or where the error adversely affected the defendant's right to a fair trial. (*People v. Carlson* (1980), 79 Ill. 2d 564, 576-77, 404 N.E.2d 233, 238.) We find that both prongs of the plain error doctrine are present in the case at bar—the evidence is closely balanced and the State's comments adversely affected defendant's right to a fair trial. It, therefore, is proper to review the above complained-of comments.

■ The complained-of comments occurred in the State's rebuttal argument as follows:

> "[Y]ou are shown this file here and told murder means nothing to someone in this courtroom here. Those of you who still have decency murder means something and the defendant is charged with murder here. She admits to that murder. However, she is asserting she was justified and it will be up to you members of the jury to decide exactly if she was justified or not because that is what your duty is ***."

According to the State's argument, guilt of murder is confessed by asserting the affirmative defense of self-defense. This argument is clearly a misstatement of the law. In order to sustain the charge of murder, the State must prove that defendant was not justified in using the force which she used. (Illinois Pattern Jury Instructions, Criminal, No. 7.02 (2d ed. 1981).) Thus, if defendant had actually admitted to "murder," she would have admitted she was not justified in using the force which she did use, thereby precluding her from asserting self-defense. Although this distinction between the legal definition of "murder" and the colloquial use of the word "murder" may seem inconsequential to those trained in the legal profession, members of the jury may not be sophisticated enough to separate the legal meaning from the colloquial meaning. A clear misstatement of the law during the State's closing argument can substantially influence the jury's determination. (*Estes*, 127 Ill. App. 3d at 649, 469 N.E.2d at 282.) Moreover, it is improper for the State to say anything during closing argument, the only effect of which is to arouse the prejudice and passion of the jury against the defendant without shedding any light on the paramount question presented to the jury. (*Estes*, 127 Ill. App. 3d at 650, 469 N.E.2d at 282, citing *People v. Crossno* (1981), 93 Ill. App. 3d 808, 821, 417 N.E.2d 827, 838; *People v. Lurry* (1979), 77 Ill. App. 3d 108, 114, 395 N.E.2d 1234, 1238.) The complained-of argument both misstates the law, thereby influencing the jury's determination, and was made to arouse the passion of the jury and prejudice it against the defendant.

The standard for determining whether the remarks of a prosecutor during closing argument constitute reversible error is whether those comments were such that, without their having been made, the jury might have reached a different result. (*People v. Barnes* (1983), 117 Ill. App. 3d 965, 978, 453 N.E.2d 1371, 1382.) During closing argument, the State is afforded wide latitude to comment on evidence and draw reasonable inferences therefrom. (*People v. Linscott* (1991), 142 Ill. 2d 22, 38, 566 N.E.2d 1355, 1362; *People v. Harris* (1990),

196 Ill. App. 3d 663, 675, 554 N.E.2d 367, 375.) The Illinois Supreme Court has held that when the State exceeds the bounds of that latitude, generally, the trial court's action in sustaining objections and instructing the jury to disregard improper statements is sufficient to cure any prejudice which may have been caused by the remarks. (*People v. Campbell* (1990), 199 Ill. App. 3d 775, 783, 557 N.E.2d 556, 561-62, citing *People v. Baptist* (1979), 76 Ill. 2d 19, 30, 389 N.E.2d 1200, 1206.) The trial court's determination of the propriety of closing argument should not be disturbed on review, unless there is a clear abuse of discretion on the part of the trial court. *People v. Smothers* (1973), 55 Ill. 2d 172, 176, 302 N.E.2d 324, 326-27; *Harris*, 196 Ill. App. 3d at 675, 554 N.E.2d at 375.

After reviewing the record, we find that the cumulative impact of the above improper comments may well have prejudiced the jury and constituted a material factor leading to defendant's conviction. (*People v. Whitlow* (1982), 89 Ill. 2d 322, 341, 433 N.E.2d 629, 638; *People v. Ray* (1984), 126 Ill. App. 3d 656, 663, 467 N.E.2d 1078, 1084.) Defendant, therefore, was deprived of a fair trial and is entitled to a new trial. See *Whitlow*, 89 Ill. 2d at 341, 433 N.E.2d at 638.

A criminal conviction should not be reversed on the sufficiency of the evidence unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt as to defendant's guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276.) When a defendant challenges his conviction on the grounds that the evidence against him was insufficient, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Collins*, 106 Ill. 2d at 261, 478 N.E.2d at 277, citing *Jackson v. Virginia* (1978), 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781.) The trier of fact determines whether the State has met the burden of proving defendant's guilt beyond a reasonable doubt. (*People v. McDonald* (1975), 62 Ill. 2d 448, 456, 343 N.E.2d 489, 493.) Further, a reviewing court may not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of witnesses. *People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313.

■ When a defendant raises the affirmative defense of self-defense, the trier of fact must consider whether a reasonable mind could fairly conclude that the State proved beyond a reasonable doubt that defendant did not act in self-defense. (*People v. Riggins* (1990), 205 Ill. App. 3d 904, 910, 564 N.E.2d 122, 125, citing *People v. Williams* (1974), 57 Ill. 2d 239, 311 N.E.2d 681.) In order for defendant to suc-

cessfully utilize the affirmative defense of self-defense, she must present some evidence that (1) force had been threatened against her, (2) she was not the aggressor, (3) the danger was imminent, (4) the force threatened was unlawful, (5) she actually believed a danger existed, (6) the use of force was necessary to avert the danger, (7) the kind and amount of force she used were necessary, and (8) the above beliefs were reasonable. (Ill. Rev. Stat. 1987, ch. 38, pars. 3—2, 7—1.) After the defendant has presented some evidence of the above, the State must sustain the burden of proving the defendant guilty beyond a reasonable doubt as to the issue of self-defense, along with proving the elements of the crime charged. Ill. Rev. Stat. 1987, ch. 38, par. 3—2.

■ There was evidence at trial that the decedent was asking defendant and Beathea to move away from the van, that he went to get Franklin away from the women after he witnessed Franklin hit them and that defendant requested and later brandished a large knife. The jury could have believed the State's witnesses' accounts of what transpired and found that there was no danger or force threatening defendant after Franklin was in the van with the windows rolled up. The jury could have reasonably found from the evidence that defendant was the aggressor against decedent. The jury was not required to accept the defendant's witness' version of what transpired. (*People v. Perry* (1980), 91 Ill. App. 3d 988, 415 N.E.2d 523.) After viewing the evidence in the light most favorable to the State, we find that a rational trier of fact could have found the essential elements of murder beyond a reasonable doubt, even considering the affirmative defense of self-defense. (*Collins*, 106 Ill. 2d at 261, 478 N.E.2d at 277, citing *Jackson v. Virginia* (1978), 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781.) Since the evidence is only conflicting, we refuse to substitute our judgment for that of the jury and reverse defendant's conviction on the basis of insufficiency of the evidence. *People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733.

For the foregoing reasons, the conviction of the circuit court of Cook County is reversed and this cause remanded for a new trial.

Reversed and remanded.

CAMPBELL and O'CONNOR, JJ., concur.