No. 2--00--0571 

________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

________________________________________________________________

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of Winnebago County.

)

Plaintiff-Appellee, ) 

                                )                   

v.                  )  No. 97--CF--1331

)

NATHANIEL SLABAUGH, ) Honorable

) K. Craig Peterson,

Defendant-Appellant. ) Judge, Presiding.

________________________________________________________________

JUSTICE GROMETER delivered the opinion of the court:

Following a jury trial, defendant, Nathanial Slabaugh, was convicted of mob action (720 ILCS 5/25--1(a)(2) (West 1996)), aggravated battery (720 ILCS 5/12--4(b)(6) (West 1996)), and resisting or obstructing a peace officer (720 ILCS 5/31--1(a) (West 1996)).  He appeals, contending that (1) the trial court erred by allowing the prosecutor to impeach two defense witnesses with evidence that they pleaded guilty to misdemeanors arising out of the same incident as the charges against defendant; and (2) the prosecutor's closing argument deprived defendant of a fair trial.  We reverse and remand.

On June 25, 1997, Kenneth Kloweit and Janet Kloweit held a birthday party for their daughter, Kelly, at the Auto Inn in Rockford.  Kelly's fiancé, Corey Jones, and defendant were among the guests.  Sometime after midnight a fight broke out.  Apparently the fight was initially between Jason Radounis and Sam Stella but soon escalated into a general melee.  The fight started in the beer garden and spilled out onto the sidewalk.  The police were called.  By the time the officers arrived the conflict had subsided, but they attempted to disperse the crowd so that it would not start up again.

Kurt Whisenand was one of the first officers to arrive.  He and Jason Cebuhar, another Rockford police officer, told the people gathered in the beer garden several times that they had to leave but received little or no response.  According to the police officers, as a few people began leaving the beer garden, Whisenand saw Corey Jones push another man, later identified as Michael Scalise.  Cebuhar told Jones that he was under arrest, but Jones responded with a profanity.  Whisenand and Cebuhar then grabbed Jones's arms in an attempt to arrest him.  Cebuhar and Jones ended up on the ground.

Whisenand testified that, as he and Cebuhar were struggling  with Jones, Whisenand saw defendant punch Cebuhar in the midsection.  Cebuhar testified that he punched defendant in the face.  Meanwhile, two other officers, Kevin Nordberg and David Lee, pulled defendant off Cebuhar and tried to arrest him.  Defendant and Lee fell to the ground with defendant on top.  Nordberg and Lee testified that defendant punched Lee in the head before they were able to handcuff him.  At some point Jolie Swartz stepped in front of Cebuhar and said something like, "This is not necessary."  He arrested her for obstructing a peace officer.

The defense witnesses testified that neither defendant nor Jones, who was tried with him but is not a party to this appeal, provoked or assaulted the officers.  Janet Kloweit testified that after the fight broke out she and her husband decided it was time to end the party.  As she was walking to her car, she saw Jones face down on the sidewalk.  A police officer had his knee on Jones's shoulder.

Swartz testified that she saw some officers standing behind Jones, with an officer holding each arm.  She later saw defendant on the ground with five or six officers around him punching him and spraying him with mace.  Defendant was curled up in a fetal position.  She approached one of the officers and told him that what they were doing was not necessary.

Scalise testified that he was standing on the street next to Jones when Jones pushed him in the chest and was immediately arrested.  Defendant was standing 5 to 10 feet away.  As defendant began to move toward Jones, he was thrown to the ground by four or five officers.  Scalise never saw defendant punch or push a police officer.

Michael Rich testified that defendant was telling the officers to calm down because they were being too rough with Jones.  Defendant was only trying to get the officers' attention when they tackled him and sprayed him with mace.

Jones testified that after the fight ended he was standing at the entrance to the beer garden with Scalise.  The two exchanged words and Jones pushed Scalise.  He was then hit in the back of the head by several officers, fell to the ground, and was handcuffed.

Defendant testified that after Jones pushed Scalise several officers threw Jones to the ground and started kicking and kneeing him.  He began moving toward Jones and either fell or was knocked down.  Officers then began hitting and macing him.

In rebuttal, Vic Olszewski, the owner of the Auto Inn, testified that he saw Jones struggling with police officers who were trying to arrest him.  He later saw defendant hit an officer, after which there was a brawl.  Defendant fought back before being maced and taken into custody.

After hearing this evidence, the jury found defendant guilty.  The court sentenced him to two years' conditional discharge, and this appeal followed.

Defendant first contends that the court erred by permitting the State to impeach two defense witnesses, Swartz and Rich, with evidence that each pleaded guilty to obstructing a peace officer.  On cross-examination, Swartz denied that she had ignored several requests by the police to leave the area.  However, she admitted that on July 27, 1997, she pleaded guilty to obstructing a peace officer.  According to the prosecutor, the complaint alleged that "Officer Cebuhar told Miss Swartz to leave the area several times and she refused the officer's request."  Swartz testified that she did not have a lawyer when she pleaded guilty and did not read the complaint.  She did not recall the complaint being read to her in open court.

During the prosecutor's cross-examination of Michael Rich, the following colloquy occurred:

"Q. *** Were you told several times to leave the area by officers and did you refuse to leave and attempt to start the fight again?"

A.  I never tried to start the fight again.  But I was told to leave the area a lot, yes."

However, the prosecutor then asked him whether he had pleaded guilty to a complaint charging that he "was told by officers several times to leave the area.  He refused to leave and attempted to start the fight again."  He admitted that he pleaded guilty.

In 
People v. Montgomery
, 47 Ill. 2d 510 (1971), the supreme court considered under what circumstances a defendant could be impeached with evidence of his prior convictions.  The court adopted proposed Federal Rule of Evidence 609, providing that prior convictions for impeachment purposes should be limited to crimes punishable by imprisonment for more than one year (felonies) or any crimes involving dishonesty.  
Montgomery
, 47 Ill. 2d at 516.

In 
People v. Stover
, 89 Ill. 2d 189 (1982), the court held that 
Montgomery
 applied to witnesses other than the defendant.  Specifically, 
Stover
 held that it was error to permit the impeachment of a defense witness with the fact that he pleaded guilty to charges of obstructing a peace officer that arose out of the same incident as the charges against defendant.  
Stover
, 89 Ill. 2d at 194-95.  The court rejected the State's argument that the guilty plea was admissible as a prior inconsistent statement after the witness denied the conduct to which he pleaded guilty.  
Stover
, 89 Ill. 2d at 195.

Stover
 is indistinguishable from this case.  The State impeached both Swartz and Rich with their guilty pleas to obstructing a peace officer.  Obstructing a peace officer is a misdemeanor (see 720 ILCS 5/31--1(a) (West 1996)) that does not involve dishonesty or false statement and is therefore inadmissible as impeachment under 
Montgomery
.  The State attempts to distinguish 
Stover
 on the basis that the guilty pleas here were "judicial admissions" rather than "prior inconsistent statements."  This is a distinction without a difference.  The plea in 
Stover
 was surely a judicial admission also.

The only authority the State cites in support of its contention that the guilty pleas were admissible is a passage from a reference work discussing the admission of guilty pleas in traffic cases during related civil litigation.  See M. Graham, Cleary & Graham's Handbook of Illinois Evidence §802.4, at 758-59 (7th ed. 1999).  Professor Graham expressly acknowledges and distinguishes 
Stover
.

We note that testimony about his guilty plea did not even impeach Rich, who admitted that the police told him several times to leave.  Thus, evidence of the guilty plea was merely cumulative of Rich's testimony during cross-examination.  Generally, prior consistent statements are inadmissible.  See 
People v. Emerson
, 97 Ill. 2d 487, 500 (1983).  Although Rich denied that he attempted to "restart the fight," attempting to restart a fight is not an element of obstructing or resisting a peace officer (see 720 ILCS 5/31--1(a) (West 1996)) and therefore was not admitted by the guilty plea.

Clearly, the witnesses' credibility was the critical issue at trial.  Defendant was thus prejudiced by the improper impeachment of the defense witnesses, and his conviction must be reversed.

Defendant also contends that the prosecutor made numerous improper comments during closing argument.  Defendant contends that the prosecutor stated repeatedly that defense witnesses conspired to commit perjury, that the jurors should show their support for law enforcement by their verdict, and that defendant was an "animal" and a "maniac."

The State responds that defendant waived his objections to many of the remarks by failing to object to them during trial and that the court sustained several of the objections that were made, thus curing any prejudice.  The State contends that the remaining remarks were either proper comments on the evidence or were harmless error.  Because we are reversing defendant's conviction on the improper impeachment issue, we address this issue primarily for the benefit of the parties on remand.  As a result, we find it unnecessary to distinguish between comments that were objected to and those that were not.  We trust that errors will not be repeated on retrial regardless of whether defendant successfully preserved his objection in the first trial.

We observe that the State's closing argument was not so much a comment on the evidence as a series of innuendos and outright personal attacks against the defense witnesses.  Several times, the prosecutor strongly implied that various defense witnesses had conspired to commit perjury.  For example, in discussing Jolie Swartz's testimony, the prosecutor emphasized that she pleaded guilty to an offense arising from the same incident.  He then stated:

"And before she could get--could think about getting a chance to or think about this and think about lying about it or thinking about taking some other action about what she had done on that particular night, before she could talk to some lawyer who might try to talk her out of doing the right thing and pleading guilty, in a fleeting moment for her of doing the right thing she pled guilty to exactly what she did in this particular situation. ***

Now of course she had nothing to lose because of that plea of guilty and she wants to help out her friends.  And so she's here to testify, and she lie [
sic
] all she wants."

Later, in discussing the testimony of defendant and Jones, the prosecutor stated:

"They want a free pass on hitting these police officers.  Make no mistake about it.  They have totally [
sic
] control over how this defense was conducted, how these witnesses were brought in.  And it's amazing out of--out of 25 pals of theirs that were there, these were the best that they could come up with.

They talked together about the case.  All the rules go out the window.

MR. GAZIANO [defense counsel]: Judge, objection.

THE COURT: Sustained as to all the rules.

***

MR. WEBER [the prosecutor]: Apparently no one instructed them not to talk together about this case because--

MR. GAZIANO: Objection.

MR. WEBER: --because they did.

***

MR. WEBER: Apparently nobody told these two defendants that you can't get--sit down together and get your stories straight and come in to court and talk about it.  Because that's what they told you they did.  Corey, you're a peaceful guy, right?  Calls Gary Jury [
sic
] to say that, you know, he's peaceful.  What an insult.  What an insult to your intelligence.  That's all I am going to say about that.

Total control over who they are going to call and what they will say.  And of course they denied hitting these police officers.  They are home free."

In rebuttal, the prosecutor stated:

"And Mr. Gaziano says, you know, that I say that these two guys concocted a defense, and where does that leave him.  I can--can answer for him where that leaves him.  That leaves him in the dark.  Way long gone in a cloud of dust.  Because before this man could get a chance to even talk to these two guys and tell them look, look you knuckleheads, don't get together and talk about your testimony, it looks stupid, it looks like you are lying, it looks like you are concocting a story, don't do it.  Unfortunately for this man he got lost in a cloud of dust while they were creating their defense."

Prosecutors generally have a great deal of latitude in closing argument.  
People v. Blue
, 189 Ill. 2d 99, 127 (2000).  The State may comment on the evidence and all the inferences reasonably drawn from it.  
People v. Pasch
, 152 Ill. 2d 133, 184 (1992).  However, argument that serves no purpose but to inflame the jury is error.  
Blue
, 189 Ill. 2d at 128; 
People v. Kidd
, 147 Ill. 2d 510, 542 (1992).  Statements in closing argument that defense counsel fabricated a defense, attempted to free his client through trickery or deception, or suborned perjury are improper.  
Kidd
, 147 Ill. 2d at 542; 
Emerson
, 97 Ill. 2d at 497.  "It is blatantly improper to suggest that the defense is fabricated, as such accusations serve no purpose other than to prejudice the jury."  
People v. Aguirre
, 291 Ill. App. 3d 1028, 1035 (1997).

Here, the prosecutor repeatedly argued that defense witnesses were "lying," "s[a]t down together and [got their] stories straight," "concocted" their defense, and "creat[ed] a defense."  This was clearly improper unless based on some evidence.  However, both defendant and Jones 
denied
 that they discussed their testimony.  Specifically, Jones testified on cross-examination as follows:

"Q.  *** [H]ow often have you guys talked about what happened?

A.  We never talk about it.  It's a sore subject."

***

Q.  So you--You never get together and *** talk about this--this sore subject that happened?

A.  We may have a few times.  
But nothing relevant to the case 
 
now
.  We don't sit there and say, 'Oh, well.  What do you think we are gonna do about this?' " (Emphasis added.)

Similarly, defendant testified as follows:

"Q. You talked about the case with him.

A.  Yes.

Q. Talked about your testimony with him?

A. Wondering what it's going to be like, yes."

These ambiguous comments hardly support the inference that defendants conspired to fabricate a defense.  For various reasons, the trial took place nearly two years after the incident in question.  It seems unreasonable that two friends would see each other often for two years and never mention the incident.
  That the codefendants discussed the incident between themselves does not permit the inference that they fabricated their testimony.

We are not persuaded that the remarks were proper merely because in rebuttal the prosecutor specifically exempted defense counsel from complicity, contending instead that he was "in a cloud of dust" while the defense witnesses independently "concocted" the defense.  In 
People v. Harris
, 228 Ill. App. 3d 204, 208 (1992), this court condemned an argument that defendant herself suborned perjury by forcing her daughter to testify falsely.  Here, the tenor of the argument was clearly that the defense was fabricated, regardless of who was at fault.

The prosecutor also attacked defense witnesses Kenneth and Janet Kloweit, who were both Rockford school teachers, accusing them of fostering disrespect for the police.  Specifically, the prosecutor stated:

"There are some things that you can't teach teachers in the Rockford Board of Education if they don't have it their whole lives, and that thing you cannot teach is integrity and the desire not to hide anything from the police and prosecution.  And what does our good schoolteacher from the Rockford Board of Education teach us and teach these two guys?  Don't talk to the police.

MR. GAZIANO: Objection.  Objection.

MR. WEBER: Judge.

MR. GAZIANO: Objection.

THE COURT: The objection will be sustained.  There is no such testimony.

MR. WEBER: Let me--

THE COURT: Ignore that statement.

MR. GAZIANO: I would like that statement disregarded by the jury.

THE COURT: You should totally disregard that comment.  Mr. Weber, you need to clarify that.

MR. WEBER: Sure I will, Judge.

The lesson learned here is don't talk to the prosecutor and his detective from the Rockford City police department when they come over and they want to talk to you about the case.

MR. GAZIANO: I'll object.

MR. WEBER: That is the evidence, Judge.

MR. GAZIANO: I will object.

THE COURT: I will sustain the objection.

MR. WEBER: Judge, that's the evidence.

MR. GAZIANO: Judge, I will object to his arguing in the presence--

THE COURT: Continue to another point, Mr. Weber.

MR. WEBER: The testimony was that I asked--I went over to their house and I asked them okay, folks, I asked them, you know, will you talk to us; will you talk to us.  No.  That's what this teacher said.  No, I am not going to talk to you.  I am going to talk to Mr. Gaziano.  I am going to talk to you in court.  But I--I--I am going to sit down together with my wife and this defendant and we are going to talk about our testimony and the case.  What a wonderful lesson to teach your kids."

Later, the prosecutor returned to this point yet again, stating:

"Well, that is really what is wrong with society today is that we--is some of the things that we teach our kids. *** And they turn out to use the court system as these two defendants did to put together this kind of a defense with friends like Jolie Swartz and Mike Rich."

Generally, the State may properly dwell upon the evil results of crime and urge the fearless administration of the law.  
People v. Harris
, 129 Ill. 2d 123, 159 (1989).  However, it is error for the State to say anything the only effect of which is to arouse the prejudice and passion of the jury without shedding any light on the "paramount question presented to the jury."  
Harris
, 228 Ill. App. 3d at 209.  In 
People v. Threadgill
, 166 Ill. App. 3d 643 (1988), the court found reversible error in the prosecutor's comments that a not guilty verdict was tantamount to not supporting law enforcement in the community.
  The court said that the comments "bore no relationship to the evidence and, instead, diverted the jurors away from the evidence by turning the trial into a test of the jurors' support for their local police officers."  
Threadgill
, 166 Ill. App. 3d at 651.

Similarly, the Kloweits' supposed attitude about cooperating with the police had
 nothing to do with the issue whether defendant assaulted a police officer.  The prosecutor’s comments were intended to focus the jury's attention away from the evidence by turning its deliberations into a referendum on local law enforcement.  We note that, although the trial court sustained defendant's objections, the prosecutor returned to this subject at least twice after being instructed to move on to another point.  Although the prompt sustaining of a defense objection and an instruction to disregard the improper statements will generally cure any error, when the State repeatedly attempts to make unfounded arguments, the defendant may be prejudiced despite the sustaining of the objections.  
Aguirre
, 291 Ill. App. 3d at 1035.

The prosecutor was apparently piqued because the Kloweits declined to speak to him when he and a Rockford police detective arrived at their house unannounced but a short time later spoke with defense counsel.  A witness is not obligated to speak to an attorney for the other party.  
People v. Allison
, 236 Ill. App. 3d 175, 183 (1992); 
People v. VanZile
, 48 Ill. App. 3d 972, 977 (1977); Illinois Pattern Jury Instructions, Criminal, No. 3.10 (4th ed. (2000)).  Also, it is entirely proper for a lawyer to interview his own witnesses before trial.  
People v. McAleer
, 34 Ill. App. 3d 821, 830 (1975).

There is authority that a witness's refusal to be interviewed by an opposing party's attorney is probative of that witness's testimonial bias.  
Allison
, 236 Ill. App. 3d at 185; 
VanZile
, 48 Ill. App. 3d at 977.  But see 
People v. Peter
, 55 Ill. 2d 443, 451-52 (1973) (trial court did not abuse discretion by refusing to permit cross-examination on this point); 
People v. Williams
, 131 Ill. App. 3d 597, 609 (1985) (same).  However, we are aware of no authority that allows a prosecutor to argue that a witness's refusal to be interviewed before trial is evidence that the witness is teaching children an attitude of disrespect for law enforcement.  Here, the prosecutor was able to question the witnesses extensively about their refusal to speak with him.  Statements about the witnesses fostering a disrespect for the police were clearly unwarranted and served only to prejudice the jury against defendant.

Defendant complains of other comments by the prosecutor.  The prosecutor argued that Mike Scalise's testimony had differed from his earlier statements in which he said that Jones was struggling with the police.  The prosecutor then asked rhetorically, "Could it be, could it be that he is going to have to--Mike Scalise is going to have to face this guy out on the street sometime when there aren't two officers standing right there?"  We agree with defendant that there is no evidence in the record to support this innuendo.  Argument that defendant has committed crimes other than the one for which he is on trial is improper.  
People v. Valdery
, 65 Ill. App. 3d 375, 378-79 (1978).  Characterizing a defendant as a "maniac" and an "animal" has been condemned although, without more, it has generally been found to be harmless error.  See 
People v. Johnson
, 119 Ill. 2d 119, 139-40 (1987).

In addition to the improper impeachment, the prosecution's numerous improper arguments deprived defendant of a fair trial.  For these reasons, his conviction must be reversed.  However, we have reviewed the evidence and find that it was sufficient to prove his guilt beyond a reasonable doubt.  Therefore, double jeopardy principles do not bar a new trial, although we are not making a finding that will be binding on retrial.  See 
People v. Taylor
, 76 Ill. 2d 289, 309 (1979).

The judgment of the circuit court of Winnebago County is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

HUTCHINSON, P.J., and RAPP, J., concur.