THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT GUTIERREZ, Defendant-Appellant.

Third District    No. 3—92—0069

Opinion filed December 23, 1992.

Richard H. Parsons, of Peoria, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCUSKEY delivered the opinion of the court:

Following a jury trial, the defendant, Robert J. Gutierrez, was convicted of armed violence (Ill. Rev. Stat. 1991, ch. 38, par. 33A—2), two counts of aggravated discharge of a firearm (Ill. Rev. Stat. 1991, ch. 38, par. 24—1.2(a)(2)), attempted residential burglary (Ill. Rev. Stat. 1991, ch. 38, pars. 8—4(a), 19—3(a)) and unlawful use of a weapon by a felon (Ill. Rev. Stat. 1991, ch. 38, par. 24—1.1(a)). The defendant was sentenced to concurrent terms of 20, 15, 15, 7, and 5 years' imprisonment.

The defendant raises four issues on appeal: (1) whether he was denied his right to a fair trial because, during closing argument, the prosecutor improperly vouched for the veracity of the State's witnesses and called the defendant and defense witnesses liars; (2) whether the State met its burden of disproving the defendant's voluntary intoxication defense; (3) whether the prosecutor improperly placed the burden of proving the voluntary intoxication defense upon the defendant during his closing argument; and (4) whether the trial court abused its discretion in imposing sentence.

We reverse and remand for a new trial because we find that the prosecutor, in his closing argument, improperly argued that the burden was on the defendant to prove his intoxication defense. This improper argument denied the defendant his constitutional right to a fair and impartial trial.

At trial, three witnesses testified that they observed, from across the street, a long-haired man remove a screen from a window at the Schlarman House. The Schlarman House is a low-income residential facility located at 707 N.E. Madison Street in Peoria. This incident occurred at about 5 p.m. on June 5, 1991. After removing the screen, the long-haired man then went around a corner of the Schlarman House.

Virginia Churchhill, a 59-year-old resident at the facility, testified that, around 5:30 p.m., she saw the defendant in the area between the unlocked outside doors to the Schlarman House and the locked inside security door. Churchhill saw the defendant push over a small table and a newspaper vending machine. The defendant acted like he was trying to hide behind these items, and Churchhill thought he was sick or something. She opened the security door and asked him to move so

that she could leave. The defendant then pushed his way into the building. Churchhill tried to push him out. She asked the defendant what he was looking for, but he did not say a word. She said he looked around like he was afraid. The defendant then pulled a small gun out of his pocket. He ran into the community room of the facility, and Churchhill went to call the police.

Georgia Morton, age 71, testified that she saw the defendant struggling with Churchhill. She stated the defendant looked "kind of wild," like he did not know where he was or what he was doing. Morton also testified that the defendant had trouble getting the gun out of his pocket.

Three witnesses who were present in the community room testified that the defendant came into the room, turned a chair over, got behind the chair and fired the gun once or twice. One of the witnesses stated that the defendant "acted like he was scared or something." The defendant tried to get out of a sliding glass door in the community room, which was locked, and then went out the door to the lobby.

Churchhill again saw the defendant when he came out of the community room. He tried to hide behind a small, round storage table he had knocked down and then fired more shots. One shot went into an apartment. Churchhill then ran back down the hall. She characterized the defendant's behavior as "very strange."

Priscilla Miller testified that she was a police officer and was called to the Schlarman House around 5:30 p.m. on June 5, 1991. Miller saw the defendant "staggering" across the lawn towards the road as she pulled up. When she saw a gun in his hand, she pulled her weapon and told the defendant to drop his gun. The defendant continued to walk toward her. Miller again yelled at him to drop his gun. The defendant then dropped his gun to the ground. Miller testified that she believed the defendant was under the influence of "something" when she came into contact with him. A stipulation was presented that a bullet found inside the Schlarman House was fired from the gun recovered from the defendant.

The defendant testified that he was 32 years old and had had problems with alcohol since he was 19. The defendant said he began drinking beer around 7 a.m. on June 5, 1991. He testified that he drank beer at home and at several different bars. The defendant estimated he drank that day "in the neighborhood of 50 beers." He remembered going to his father's bar about 3:30 p.m. The defendant remembered drinking some beer there and then telling someone that he was going home. The next thing he remembered was waking up in a police department holding cell. The defendant lived about 2½ blocks

from the Schlarman House. However, he said that he didn't know anybody there and didn't intend to steal anything.

The defendant's father testified that he saw the defendant about 11:30 a.m. The defendant was supposed to work at his father's bar that afternoon. However, he was too intoxicated to work. Joseph Delgado testified he saw the defendant coming out of a bar in downtown Peoria around 2:45 p.m. In Delgado's opinion, the defendant was under the influence of alcohol. Lucky Hedgepeth, age 68, also testified for the defense. He was a resident at the Schlarman House and saw the defendant come out of the facility on June 5. He stated that the defendant's face was chalky. Hedgepeth said the defendant looked glassy, like he was out of his mind or out in space.

Theodore Mathews testified he had been a clinical psychologist since 1968. He evaluated the defendant prior to trial. Mathews concluded the defendant had a borderline personality disorder complicated by chronic, severe alcoholism. Based upon the defendant's reported drinking on June 5, 1991, Mathews concluded that it would not be unreasonable to expect a blackout. Mathews also concluded the defendant's level of drinking would be consistent with the suspension of both judgment and reasoning. During cross-examination Mathews stated there would be some impairment of motor skills in a person who had consumed 50 beers and that such a person would have difficulty removing a screen.

In rebuttal, the State presented the testimony of Pat Rabe, a police detective, who interviewed the defendant approximately one hour after his arrest. Rabe testified that the defendant did not slur his speech or have any difficulty comprehending the questions put to him. Rabe also admitted that he observed the defendant earlier at the Schlarman House. Rabe concluded the defendant appeared to have been drinking or was under the influence of drugs when he first observed him at the Schlarman House.

During closing argument, the prosecutor argued that he believed the State's witnesses were all credible. In discussing the testimony of the defense witnesses, however, he argued that it was "absolutely unbelievable." The prosecutor also argued the defense witnesses had a motive to lie. Additionally, the prosecutor argued that either Mathews or the defendant was lying and that the defendant had to have lied at some point. In addition, the prosecutor argued that, "[b]eing drunk does not excuse your behavior. It simply isn't the law." He argued, "[t]hey state some absolutely unbelievable intoxication defense. It's not there. They didn't prove it. Mathews didn't prove it. Mr. Gutierrez didn't prove it." Later, the prosecutor argued that the defense

witnesses did not establish the intoxication defense. We note that no objection was made to any of the prosecutor's comments either during the trial or in the defendant's post-trial motion.

The defendant first contends on appeal that it was improper for the prosecutor to state his personal opinion regarding the credibility of the State and defense witnesses. The defendant concedes that his arguments must meet the plain error standard because there was no objection at trial and the issue was not raised in a post-trial motion.

■ A "prosecutor has the right to comment on the evidence, draw all legitimate inferences deducible from the evidence even if they are unfavorable to defendant, and comment on the credibility of the witnesses." (*People v. Johnson* (1992), 149 Ill. 2d 118, 145, 594 N.E.2d 253, 267.) It is not permissible, however, for the prosecutor to state his personal opinion regarding the veracity of witnesses or to vouch for the credibility of witnesses. (*People v. Roach* (1991), 213 Ill. App. 3d 119, 124, 571 N.E.2d 515, 518.) After a careful review of the record, we conclude the prosecutor only briefly referred to his "belief" that the State's witnesses were credible. Therefore, based on the evidence in this case, we cannot say that these prosecutorial comments were sufficiently egregious to constitute plain error.

The defendant next argues that the State's evidence was not sufficient to meet its burden to prove beyond a reasonable doubt that the intoxication defense did not apply. As part of this argument, the defendant also points out that the prosecutor misstated the law regarding the intoxication defense when he argued that the defendant and the defense witnesses did not "prove" the defense.

A defense of voluntary intoxication exists where the intoxication is "so extreme as to suspend the power of reason and render [the defendant] incapable of forming a specific intent which is an element of the offense." (Ill. Rev. Stat. 1991, ch. 38, par. 6—3(a).) The intoxication must be so extreme as to suspend *all* of the defendant's powers of reason. (*People v. Kyse* (1991), 220 Ill. App. 3d 971, 974, 581 N.E.2d 285, 287.) The defendant is correct that, once some evidence of an affirmative defense such as voluntary intoxication is presented, "the State must sustain the burden of proving the defendant guilty beyond a reasonable doubt as to that issue together with all the other elements of the offense." (Ill. Rev. Stat. 1991, ch. 38, par. 3—2(b).) Thus, if the evidence presented is sufficient to raise the affirmative defense of voluntary intoxication, *the burden is on the State* to rebut that defense by proving beyond- a reasonable doubt that the defendant was aware of his actions at the time of the offense. *People v. Ehrich* (1988), 165 Ill. App. 3d 1060, 1067, 519 N.E.2d 1137, 1141.

The defendant contends that the State did not meet its burden because the evidence presented by both the State and the defense showed that the defendant had been drinking heavily, appeared to be under the influence of alcohol, and engaged in such bizarre behavior that his power of reason had to have been suspended. The defendant notes the evidence showed that he appeared "wild," "glassy" and "out of his mind." He also acted scared, inexplicably tried to hide behind several rather small objects, fumbled with his gun and did not say anything the entire time he was inside the Schlarman House. This behavior was described by a State witness as "very strange." The first police officer on the scene testified that she saw the defendant "staggering" across the lawn and stated she thought the defendant was under the influence of "something." The defendant also notes his expert witness concluded that the defendant's level of drinking would be consistent with a blackout and with the suspension of judgment and reasoning.

The State argues the voluntary intoxication defense was not available to the defendant for the offenses of aggravated discharge of a firearm and the unlawful use of a weapon by a felon. The State contends that these offenses are general intent crimes rather than specific intent crimes. However, the State did not raise this argument in the trial court and did not object when a voluntary intoxication defense instruction regarding these offenses was given to the jury. The principle that an issue not raised in the trial court is considered waived applies equally to the State as well as the defendant in a criminal case. (*People v. Adams* (1989), 131 Ill. 2d 387, 395, 546 N.E.2d 561, 564-65.) Therefore, we find the State has waived this argument.

The State also responds that sufficient evidence was presented from which a jury could find that the defendant's power of reason was not entirely suspended. The State relies on the defendant's testimony, which showed that he had a clear, detailed memory of his actions earlier that day. The State also relies on evidence that the defendant was capable of removing a screen, was able to walk around the building and inside the Schlarman House, was able to understand the police officer's order to drop his weapon, and was able to understand and answer questions one hour after the incident.

When the sufficiency of the evidence is questioned in a criminal case, the test to be employed on review is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277.) A jury's guilty verdict may be affirmed

where there is credible evidence upon which the jury could reasonably conclude that the defendant was not so extremely intoxicated at the time of the offenses that his power of reason was totally suspended. (*Ehrich*, 165 Ill. App. 3d at 1068, 519 N.E.2d at 1142; see also *People v. Leger* (1992), 149 Ill. 2d 355, 390, 597 N.E.2d 586, 601.) Also, a trier of fact is not obligated to rely upon the testimony of experts to the exclusion of lay testimony regarding the defendant's degree of intoxication. *Ehrich*, 165 Ill. App. 3d at 1068, 519 N.E.2d at 1142.

■ From our review of the record, we find there was substantial evidence presented that the defendant was extremely intoxicated and engaged in very strange behavior. Based upon this evidence, a jury certainly could have concluded that the defendant's power of reason was totally suspended. However, we note there was also substantial evidence presented from which the jury could infer (1) that the defendant was aware of his actions at the time of the offense, and (2) that the defendant's intoxication was not so extreme as to suspend all of the defendant's powers of reason. Therefore, based upon the *Collins* standard, after viewing the evidence in the light most favorable to the prosecution, we conclude there was sufficient evidence presented from which the jury could find the defendant guilty of the essential elements of the crimes beyond a reasonable doubt.

The defendant, however, has also argued that the prosecutor misstated the law regarding the intoxication defense during closing argument. It is a basic principle of our criminal justice system that the prosecutor owes the defendant a duty of fairness. This duty extends throughout the trial and includes closing statements. Therefore, the prosecutor has an ethical obligation to refrain from presenting improper and prejudicial argument. *People v. Witted* (1979), 79 Ill. App. 3d 156, 398 N.E.2d 68; See I ABA Standards for Criminal Justice, "The Prosecution Function," §§3—5.6, 3—5.8 (2d ed. 1982).

The State argues that the defendant has waived on appeal any argument that the prosecutor's comments were improper concerning the voluntary intoxication defense because they were not objected to during trial. The State correctly points out that in order to properly preserve a matter for review, a trial objection and a written post-trial motion specifically articulating the issue sought to be raised are required. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130.) The defendant acknowledges this fact, but urges this court to address the issue under the plain error exception to the waiver doctrine.

In order to overcome the waiver doctrine, the defendant must establish that the error now complained of on appeal was a plain error.

(*People v. Carlson* (1980), 79 Ill. 2d 564, 576-78, 404 N.E.2d 233, 238-39.) In other words, it must be plainly apparent from the record that an error substantially affecting the rights of the defendant occurred. (*People v. Precup* (1978), 73 Ill. 2d 7, 17, 382 N.E.2d 227, 231.) The purpose of the plain error exception to the waiver doctrine is to correct any serious injustices which have been done to a defendant so that he is not denied his right to a fair and impartial trial. *People v. Underwood* (1978), 72 Ill. 2d 124, 130, 378 N.E.2d 513, 516.

We note from the record that the defendant's counsel did not object to the prosecutor's closing argument. However, whether or not the prosecutor's improper remarks were objected to at trial, a court of review will grant relief if the trial error is so prejudicial that real justice has been denied or the verdict of the jury may have resulted from the improper comments. *Carlson*, 79 Ill. 2d at 577, 404 N.E.2d at 239.

■ We believe that a grave injustice would occur if we accepted the State's waiver argument. We find that it is plainly apparent from the record that the effect of the prosecutor's improper closing argument denied the defendant his constitutional right to a fair and impartial trial. Therefore, we must, in order to preserve justice, invoke the plain error exception to the waiver doctrine.

The evidence concerning the defendant's voluntary intoxication defense was very closely balanced. During closing argument, the prosecutor implied that voluntary intoxication was not a valid defense and repeatedly stated that the defendant and the defense witnesses did not "prove" or "establish" the intoxication defense. However, it was, in fact, *the State's burden* to prove beyond a reasonable doubt that the intoxication defense did not apply because the defendant was aware of his actions when the offenses were committed. The State argues that the prosecutor did not misstate the law because he was simply commenting on the defendant's failure to present "some evidence" to support his affirmative defense. We cannot agree. In this case, adequate evidence was clearly presented in support of an intoxication defense. We note that the State's own witnesses testified the defendant engaged in extremely bizarre behavior and was "under the influence." Thus, this was not a situation where a reasonable argument could be made that the State did not need to prove that the defense did not apply. We therefore conclude that the prosecutor's closing argument can only be interpreted as a statement that the defendant had to prove his defense of voluntary intoxication. We find the prosecutor's argument to be a clear misstatement of the law.

It is reversible error for the prosecution to attempt to shift the burden of proof to the defense. (*Leger*, 149 Ill. 2d at 399, 597 N.E.2d at 606; see also *People v. Wilson* (1990), 199 Ill. App. 3d 792, 797, 557 N.E.2d 571, 574.) This is true notwithstanding the fact that the jury is otherwise properly instructed regarding the burden of proof. (*People v. Weinstein* (1966), 35 Ill. 2d 467, 471, 220 N.E.2d 432, 434; *People v. Lopez* (1987), 152 Ill. App. 3d 667, 677, 504 N.E.2d 862, 869.) When an error is not properly preserved for review in a criminal case, as here, the plain error doctrine may be invoked where the evidence is closely balanced or where the error is of such magnitude that the defendant was denied a fair trial. *People v. Ward* (1992), 154 Ill. 2d 272, 294.

■ We cannot say with a reasonable degree of certainty that the prosecutor's improper argument did not contribute to the defendant's guilty verdicts. Also, we cannot say that the jury could not have reached a contrary verdict had the improper argument not been made. Therefore, the judgment of the trial court is reversed, and the cause is remanded for a new trial.

■ Because we have reversed the defendant's convictions, we need not consider the defendant's final contention that the trial court abused its discretion in imposing sentence. However, we do dismiss as ludicrous the defendant's suggestion that the court erred when it did not order a TASC (Treatment Alternatives to Street Crime) evaluation because the defendant clearly would not be eligible for the TASC program.

For the reasons indicated, the judgment of the circuit court of Peoria County is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

BARRY, P.J., and SLATER, J., concur.