NO. 5-99-0223

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Madison County.  

)

v. ) No. 96-CF-90

)

JOHN DERR, ) Honorable

) Ann Callis, 

Defendant-Appellant. ) Judge, presiding.  

___________________________________________________________________________

JUSTICE RARICK delivered the opinion of the court:

John Derr (defendant) was found guilty after a jury trial in the circuit court of Madison County of felony murder (robbery), involuntary manslaughter, and concealment of a homicidal death in connection with the death of Dennis Oberbeck on August 14, 1992.  Defendant was sentenced to 25 years' imprisonment for felony murder (robbery), a concurrent five-year term for involuntary manslaughter, and a consecutive five-year prison term for concealment of a homicidal death.  Defendant appeals, contending that the trial court erred: (1) in denying his motions for a judgment of acquittal and a new trial when the State failed to establish the essential elements of felony murder (robbery) as charged, (2) in allowing defendant's spouse to testify to her observations of defendant, (3) in allowing the prosecutor to make repeated references in closing argument to defendant's failure to present evidence, thereby denying defendant a fair trial, and (4) in entering a judgment on both the felony murder (robbery) and involuntary manslaughter verdicts, which defendant believes are inconsistent.  We reverse defendant's convictions and remand this cause for a new trial.

On the evening of August 13, 1992, the victim, Dennis Oberbeck, was at Geno's 140 Club in Bethalto, Illinois.  The victim worked as a bartender for the club, but on this evening he was drinking and socializing there.  The bartender on duty testified that defendant began talking to the victim around 7 p.m. and was trying to get the victim to leave with him around 10 p.m.  According to the bartender, eventually defendant, the victim, and two other men left the bar together and stood outside on the west side of the club talking.  One of the two men testified that the victim asked him to lend him some money.  He did not have the money to lend and left defendant and the victim alone outside the club at approximately 1:30 a.m.  The fourth man, according to other witnesses, joined the three while they were already standing outside the club and was asked to leave upon approaching the group.  No one testified to seeing defendant or the victim after 1:30 a.m.

Defendant's ex-wife, who at the time of the incident was still married to defendant, testified that she was awakened by voices in her living room in the early morning hours of August 14, 1992.  She recognized her husband's voice and fell back to sleep.  At approximately 2 a.m., she testified that she was again awakened, this time by a telephone call.  Following the phone call, she drove to a house in Granite City that she and defendant owned and met defendant at the side door.  Once inside, defendant showed her a ring, similar to a class ring, with a blue stone.  He then turned the lights on and off quickly, and she noted a man lying on the floor.  She went over to the man and tried without success to locate a pulse.  At the trial, she identified a body in a photograph as the body she had seen lying on the floor of the house.  She further testified that she had not observed any bruises on the face of the body similar to those depicted in the autopsy photo.  Defendant took the body from the house and put it in his van.  Defendant then drove across the street onto a levee and stopped.  She followed defendant in her truck.  They talked for a few minutes, and defendant again showed her the ring and a silver watch, which he then tossed toward the water.  They left the levee in their separate vehicles.  The wife followed defendant until she had to stop suddenly at a light.  When she stopped, a tractor in the back of the truck slid forward and broke the rear window of the truck.  At that point, she decided to go back home.  Some 30 minutes later, defendant arrived.  The body of the victim was subsequently found in the lot of an abandoned house in north St. Louis.  The autopsy report indicted that the victim's blood alcohol concentration was 0.377.  The pathologist who performed the autopsy testified that the victim died as a result of an elevated blood alcohol level that impaired his brain function and that he subsequently sustained blows to the head, which caused the brain to cease functioning.  The injuries to the victim's head, by themselves, could not have been fatal.  The pathologist further testified that the injuries to the head were most likely caused by a fist but possibly could be attributed to a combination of falls.  A wallet and a diamond wedding ring were found on the victim.  The victim's wife testified that the victim also wore a bowling ring with a ruby stone and a gold watch, neither of which were ever recovered.

Defendant raises four arguments on appeal.  We address his third contention first, for we find that the prosecutor's closing argument mandates the reversal of defendant's convictions and the remandment of this cause.  Defendant argues that the prosecutor's repeated references to his failure to present evidence to prove his innocence and testify at the trial denied him a fair trial.  We agree.

In general, prosecutors are afforded wide latitude in closing argument, and usually a trial court's determination as to the propriety of such arguments will not be disturbed on review.  See 
People v. Campbell
, 199 Ill. App. 3d 775, 783, 557 N.E.2d 556, 561 (1990); 
People v. Sheppard
, 193 Ill. App. 3d 401, 403, 549 N.E.2d 971, 972 (1990).  As defendant points out, however, this wide latitude has limits.  It is a basic principle of our criminal justice system that prosecutors owe defendants a duty of fairness.  See 
People v. Yonker,
 256 Ill. App. 3d 795, 798, 628 N.E.2d 1124, 1127 (1993); 
People v. Gutierrez
, 239  Ill. App. 3d 536, 543, 605 N.E.2d 1110, 1115 (1992).  This duty extends throughout the trial and includes closing statements.  Simply put, the prosecutor has an ethical obligation to refrain from presenting improper and prejudicial argument.  
People v. Hudson
, 157 Ill. 2d 401, 441, 626 N.E.2d 161, 178 (1993); 
Gutierrez
, 239 Ill. App. 3d at 543, 605 N.E.2d at 1115.  To be sure, a prosecutor is expected to prosecute with earnestness and vigor.  See 
People v. Lyles
, 106 Ill. 2d 373, 412, 478 N.E.2d 291, 308 (1985).  But as the United States Supreme Court has recognized, "[W]hile [the prosecutor] may strike hard blows, he [or she] is not at liberty to strike foul ones."  
Berger v. United States
, 295 U.S. 78, 88, 79 L. Ed. 1314, 1321, 55 S. Ct. 629, 633 (1935).  In this instance, prosecutor Weber made six references in closing argument to uncontradicted and/or unrebutted evidence.  We acknowledge that it is generally permissible for the State to point out that evidence is uncontradicted even if the defendant is the only person who could have provided contrary proof.  See 
People v. Keene
, 169 Ill. 2d 1, 21, 660 N.E.2d 901, 911-12 (1995); 
People v. Connolly
, 186 Ill. App. 3d 429, 437, 542 N.E.2d 517, 522 (1989).  Such comments are not permitted, however, if they are intended or calculated to direct the attention of the jury to the defendant's failure to testify.  See 
People v. Romero
, 189 Ill. App. 3d 749, 757, 546 N.E.2d 7, 12 (1989).  Mr. Weber's comments did just that.  His intent and motive were made perfectly clear by his comments outside the presence of the jury in responding to defense counsel's objections.  After the objection to Weber's first use of the word "uncontradicted" was overruled, defense counsel commented to Weber, "So you're going to go back out and aggravate it?"  Weber responded: "There's no doubt about that."  After repeating the word five more times, Weber then told the jury: "[Defendant] sure didn't prove his innocence.  He didn't prove anything."  The trial judge, in responding to defense counsel's objections, stated that she believed that Weber was "walking the line."  Weber retorted: "But I can tell you right now I know where the line is[.]  *** I know where the line is."  Our response: Mr. Weber, you do not.  In our view, Weber's comments exceeded the bounds of reasonable and proper comment.  They were part of a concerted effort to highlight defendant's failure to testify and shift the burden of proof.  It is reversible error for the prosecution to attempt to shift the burden of proof to the defense, notwithstanding the fact that the jury is properly instructed regarding the burden of proof.  See 
Gutierrez
, 239 Ill. App. 3d at 545, 605 N.E.2d at 1116.  Given the cumulative effect of the prosecutor's comments and the nature of the evidence in this case, we believe that defendant was denied a fair trial.  See 
People v. Johnson
, 102 Ill. App. 3d 122, 429 N.E.2d 905 (1981); 
People v. Escobar
, 77 Ill. App. 3d 169, 395 N.E.2d 1028 (1979).  The evidence of guilt can hardly be characterized as overwhelming; consequently, this is not a matter of harmless error.  A reversal and remandment for a new trial is not only justified in this instance, it is required.

Because we are remanding this cause for a new trial, we must consider whether the evidence was sufficient to prove defendant's guilt beyond a reasonable doubt, in order to avoid any double jeopardy problems.  See 
People v. Fornear
, 176 Ill. 2d 523, 535, 680 N.E.2d 1383, 1389 (1997).  Examining the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt (see, 
e.g.
, 
People v. Patton
, 249 Ill. App. 3d 844, 849, 619 N.E.2d 1377, 1381 (1993)), we hold that the evidence, albeit weak and primarily circumstantial, is sufficient.  The testimony of several witnesses placed defendant in the victim's company as late as 1:30 a.m.  The testimony of defendant's ex-wife placed the body of the victim alone with defendant in a house they owned.  There was no direct evidence of defendant killing, striking, or in any way harming the victim, but the pathologist who performed the autopsy on the victim testified that in his opinion the victim was struck several times with a fist and that the combination of the blows to the head and the victim's level of intoxication resulted in his death.  A defendant's acts need not be the sole and immediate cause of death in order for the jury to find him or her guilty of murder.  See 
People v. Lowery
, 178 Ill. 2d 462, 471, 687 N.E.2d 973, 978 (1997).  The State needs only to prove beyond a reasonable doubt that the defendant's actions were a contributing cause to the death such that the death did not result from a source unconnected with the defendant's acts.  As often noted, the defendant must take the victim as he finds him.  See 
Patton
, 249 Ill. App. 3d at 849-50, 619 N.E.2d at 1381.
  Moreover, it is not necessary that the trier of fact be satisfied beyond a reasonable doubt as to each link in the chain of circumstances.  See 
People v. McDonald
, 168 Ill. 2d 420, 444, 660 N.E.2d 832, 842 (1995).  The trier of fact is not required to disregard inferences that flow normally from the evidence before it, nor does it need to search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt.  See 
People v. Campbell
, 146 Ill. 2d 363, 380, 586 N.E.2d 1261, 1268 (1992).  The evidence presented supports defendant's conviction for involuntary manslaughter.  Defendant argues, however, that the evidence is "virtually non[]existent" to support the conviction for felony murder (robbery).  To convict a defendant of felony murder, the State must prove beyond a reasonable doubt that the defendant killed an individual without lawful justification if, in performing the acts that caused the death, he was attempting or committing a forcible felony other than second-degree murder.  See 720 ILCS 5/9-1(a)(3) (West 1992).  Death does not have to be contemporaneous with the commission of the forcible felony.  And the fact that the precise manner in which the death occurred may not have been foreseen does not relieve the defendant of responsibility.  See 
People v. Brackett
, 117 Ill. 2d 170, 180, 510 N.E.2d 877, 882 (1987); 
People v. Pugh
, 261 Ill. App. 3d 75, 77-78, 634 N.E.2d 34, 36 (1994).  A forcible felony includes robbery (see 720 ILCS 5/2-8 (West 1992)), and the offense of robbery is committed when a person takes property from the person or presence of another by the use of force or by threatening the imminent use of force (see 720 ILCS 5/18-1(a) (West 1992)).  See 
People v. Jones
, 149 Ill. 2d 288, 292, 595 N.E.2d 1071, 1073 (1992).  The jury could reasonably find the use of force in this instance, given the evidence of blows sustained to the victim's head prior to his death.  The evidence also revealed that a watch and a ring were taken from the victim or at least from his body.  The prosecution is not required to prove in any particular order the force and taking elements of a robbery charge.  The prosecution needs only to show some concurrence between the force used and the taking of the property.  See 
People v. Williams
, 118 Ill. 2d 407, 416, 515 N.E.2d 1230, 1235 (1987).  The fact that the victim is reduced to a state of nonresistance before any property is taken does not relieve the crime of the quality constituting robbery.  See 
People v. Lewis
, 165 Ill. 2d 305, 339-40, 651 N.E.2d 72, 88 (1995).  The prosecution does not even need to show that the force was asserted for the purpose of taking the property.  See 
People v. Aguilar
, 286 Ill. App. 3d 493, 498, 676 N.E.2d 324, 327 (1997).  We agree that the circumstantial evidence presented here was sufficient to permit the trier of fact to conclude that there was a concurrence between the use of the force that resulted in the victim's death and the taking of the property from his person.  We also have no problem with the sufficiency of the evidence to sustain defendant's conviction for the concealment of a homicidal death.  According to defendant's former wife, the body of the victim was put in defendant's van, and defendant drove off, threw some of the victim's possessions in the river, and later returned home with an empty van.  The body of the victim was subsequently found in the backyard of an abandoned building in north St. Louis.

Because we are reversing defendant's convictions and remanding this cause for a new trial, we choose not to address defendant's contention that his guilty verdicts for involuntary manslaughter and felony murder (robbery) are legally inconsistent.  We must address, however, his second contention on appeal–that the court erred in allowing defendant's former spouse to testify to her observations of defendant's actions on August 14, 1992, in violation of the marital privilege, as this issue most assuredly will resurface on a retrial.

In Illinois a husband or a wife may testify for or against each other in criminal cases, provided that neither may testify as to any communication or admission made by either of them to the other or as to any conversation between them during the marriage.  See 
People v. Layne
, 286 Ill. App. 3d 981, 989, 677 N.E.2d 469, 475 (1997); 
People v. Muzard
, 210 Ill. App. 3d 200, 212, 569 N.E.2d 26, 32 (1991).  
The admission of evidence in violation of the marital privilege, if it contributes to a guilty verdict, constitutes the denial of a fair trial and requires a reversal.  
Muzard
, 210 Ill. App. 3d at 212, 569 N.E.2d at 32-33.

Implicit in the term "communication" is speech.  See 
People v. Krankel
, 105 Ill. App. 3d 988, 991, 434 N.E.2d 1162, 1164 (1982).  Certain acts, however, may also constitute communication, such as a nod of the head.  See 
People v. Murphy
, 241 Ill. App. 3d 918, 924, 609 N.E.2d 755, 760 (1992); 
Krankel
, 105 Ill. App. 3d at 991, 434 N.E.2d at 1164.  In order to fall within the privilege, though, the nonverbal conduct must clearly be a substitute for oral communications.  The mere description by one spouse of general, noncommunicative conduct is not protected by the marital privilege.  See 
Krankel
, 105 Ill. App. 3d at 991, 434 N.E.2d at 1164; see also 
People v. Krankel
, 131 Ill. App. 3d 887, 894-95, 476 N.E.2d 777, 784 (1985).  We agree with the State that the former wife's testimony in this instance did not constitute "communications" within the intendments of any marital privilege, and therefore the trial court did not abuse its discretion in allowing her testimony.

For the aforementioned reasons, we reverse defendant's convictions and remand this cause for a new trial.

Reversed; cause remanded.  

GOLDENHERSH, P.J., concurs.

JUSTICE WELCH, dissenting:  

In 
United States v. Hasting
, 461 U.S. 499, 76 L. Ed. 2d 96, 103 S. Ct. 1974 (1983), the United States Supreme Court held that a court may not use the reversal of a criminal conviction as a means to punish or deter perceived prosecutorial misconduct in closing argument where the improper argument amounts to harmless error.  In the instant case, the majority has disregarded the Supreme Court’s admonition.  The prosecutor’s closing argument in the case at bar, even if improper, amounts to no more than harmless error and does not warrant the reversal of defendant’s conviction.  Accordingly, I dissent.   

In 
Hasting
, the prosecutor argued in closing as follows:

"Let’s look at the evidence the defendants put on here for you so that we can put that in perspective.  I’m going to tell you what the defendants did not do."  461 U.S. at 502, 76 L. Ed. 2d at 101, 103 S. Ct. at 1977.

Defense counsel objected and moved for a mistrial, which was denied.  The defendants were convicted on the basis of overwhelming evidence of guilt.  The court of appeals reversed the conviction, declining to rely on the harmless-error doctrine, stating that the application of that doctrine would impermissibly compromise the clear violation of a defendant’s constitutional right not to incriminate himself.  See 
Hasting
, 461 U.S. at 503, 76 L. Ed. 2d at 102-03, 103 S. Ct. at 1977.

In its opinion, the Supreme Court found that, notwithstanding the harmless nature of the error, the court of appeals acted to discipline the prosecutor and warn other prosecutors for what it perceived to be repeated errors in closing argument.  See 
Hasting
, 461 U.S. at 504, 76 L. Ed. 2d at 103, 103 S. Ct. at 1978.  The Supreme Court held that the court of appeals could not ignore the harmless-error doctrine simply to justify the reversal of a criminal conviction.  
Hasting
, 461 U.S. at 505, 76 L. Ed. 2d at 104, 103 S. Ct. at 1978.  The Supreme Court then went on to discuss the harmless-error doctrine, holding that it is the duty of a reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations.  
Hasting
, 461 U.S. at 509, 76 L. Ed. 2d at 106, 103 S. Ct. at 1980.  The Supreme Court held that even absent the prosecutor’s allusion to the failure of the defendant to proffer evidence to rebut the State’s evidence, it was clear beyond a reasonable doubt that the jury would have returned a verdict of guilty.  
Hasting
, 461 U.S. at 510-11, 76 L. Ed. 2d at 107, 103 S. Ct. at 1981.  Accordingly, any error in the prosecutor’s closing argument was harmless, and the conviction could not be overturned on that basis.

In the case at bar, I fear that the majority is reversing defendant’s conviction in order to punish the prosecutor for what it perceives to be his improper closing argument and not because the majority believes that the prosecutor’s closing argument seriously prejudiced defendant and deprived him of a fair trial.  As the Supreme Court held in 
Hasting
, a court of review may not reverse a conviction to punish a prosecutor, but it must engage in a harmless-error analysis to determine whether the defendant was substantially prejudiced by the prosecutor’s improper closing argument.

In Illinois, improper closing arguments warrant a reversal only where they result in substantial prejudice to the defendant, considering the content and context of the language, its relationship to the evidence, and its effect on the defendant’s right to a fair and impartial trial.  
People v. Kliner
, 185 Ill. 2d 81, 151-52 (1998).  In 
Kliner
, our supreme court held that even error resulting from the prosecutor’s comment in closing argument on the defendant’s failure to testify does not require a reversal where the reviewing court is able to conclude upon an examination of the entire record that the error was harmless beyond a reasonable doubt.  185 Ill. 2d at 157.  

Unlike the majority, then, I would engage in a harmless-error analysis to determine whether defendant was substantially prejudiced by the prosecutor’s closing argument.  I begin with the content and context of the language used by the prosecutor.  In my opinion, the majority unfairly characterizes the nature of the prosecutor’s comments and the exchanges between the prosecutor, defense counsel, and the trial judge. The majority takes the prosecutor’s comments out of context and attempts to portray them as having been made defiantly.  I simply do not read the record that way.  

"Closing arguments must be viewed in their entirety, and remarks must be viewed in context."  
People v. Armstrong
, 183 Ill. 2d 130, 146 (1998).  Reading the record of closing arguments and the discussion at the trial regarding those arguments, I do not believe that the prosecutor intended to direct the attention of the jury to defendant’s failure to testify, nor do I believe that his comments had that effect.  Finally, I do not believe that any of the comments were made defiantly.  For example, the prosecutor’s first reference to the evidence being unrebutted occurred as follows:

"We’ve also showed [
sic
] you that this clearly without any question at all was a robbery.  How did this [defendant] get possession of this 300 bowling ring from Dennis Oberbeck who wanted to leave the ring to his son who would never give it up, he would never pawn it, he would never trade it in[?]  The only time he took it off was when he went to bed.

Did he give it up willingly?  The evidence is completely unrebutted that that’s not what happened." 

Upon defendant’s objection, a discussion was held outside the presence of the jury.  The prosecutor insisted that under the law in Illinois he could properly comment on the unrebutted nature of the State’s evidence.  Defense counsel insisted that he could not.  The trial court did not sustain defendant’s objection.  The prosecutor stated that he was going to further comment on the unrebutted nature of the State’s evidence.  When defense counsel asked, "So you’re going to go back out and aggravate it?" the prosecutor responded, "There’s no doubt about that."  The prosecutor did repeat his argument that the State’s evidence was uncontradicted and unrebutted in various respects.

The prosecutor’s comment that defendant had failed to prove his innocence and had not proven anything was made in direct response to defense counsel’s closing argument that defendant did not have to prove his innocence.  The prosecutor responded in rebuttal argument:  

"[Defense counsel] has told you that the defendant is not required to prove his innocence and that’s true, and for the defendant that’s probably really good because he sure didn’t prove his innocence.  He didn’t prove anything."

Defense counsel’s objection was sustained, the comment was stricken, and the jury was immediately instructed to disregard it.   

The prosecutor’s comments about knowing where the line was occurred in the following exchange:

"THE COURT:  Well, I just want to make the record clear.  I think you were walking the line.  You walked the line.

MR. WEBER:  And I know where the line is.

* * *

MR. MARGULIS:  No, I think it would have been plain error.

MR. WEBER:  It’s not.  But I can tell you right now I know what the line is."

Reading these comments in context, I cannot agree with the majority’s conclusion that they were made defiantly or with the intent and motive to direct the jury’s attention to defendant’s failure to testify.

Looking at the prosecutor’s comments in relationship to the evidence and their effect on defendant’s right to a fair trial, I do not believe that the comments, made during the course of lengthy closing arguments, were so egregious as to cause substantial prejudice to defendant.  The most egregious of the comments, that defendant had failed to prove his innocence, was immediately cured by defendant’s timely objection and the trial court’s striking of the statement and instruction to the jury to disregard it.  "A trial judge’s prompt action in sustaining an objection to improper argument is generally sufficient to cure the error."  
People v. Arman
, 131 Ill. 2d 115, 127 (1989).  Furthermore, the jury was properly instructed that the State has the burden of proving the guilt of the defendant beyond a reasonable doubt, that this burden remains on the State throughout the case, and that the defendant is not required to prove his innocence.  The jury was also instructed that the fact that the defendant did not testify could not be considered in any way in arriving at a verdict.  These instructions go a long way toward ameliorating, if not curing, any error resulting from the prosecutor’s closing argument.  See 
People v. Tate
, 45 Ill. 2d 540, 546 (1970).  While the evidence of guilt in this case is not overwhelming and is primarily circumstantial, it is not, as the majority characterizes it, weak.  In light of all the evidence of guilt, the prosecutor’s comments could not have so prejudiced defendant as to deprive him of a fair trial.  Even if the prosecutor’s comments had not been made, it remains clear beyond a reasonable doubt that the jury would have returned a verdict of guilty.  See 
Hasting
, 461 U.S. at 510-11, 76 L. Ed. 2d at 107, 103 S. Ct. at 1981.

I note that our supreme court has repeatedly held comments similar to those made by the prosecutor in the case at bar to be harmless error.  In 
People v. Kliner
, 185 Ill. 2d 81, 157 (1998), the prosecutor had commented on the "unrebutted" nature of some of the State’s evidence.  The supreme court held that even if the prosecutor’s argument had been improper, it did not deprive the defendant of a fair trial where the defendant’s rights were sufficiently safeguarded when the trial judge, at the close of the evidence, instructed the jurors that the defendant’s decision not to testify should not be considered by them in rendering a verdict.  
Kliner
, 185 Ill. 2d at 159-60.

In 
People v. Arman
, 131 Ill. 2d 115, 125 (1989), the prosecutor commented that the jury had heard "no explanation" for the defendant’s presence at the scene of a crime.  The supreme court held on review that this comment constituted an impermissible comment on the defendant’s failure to testify, but the court found it to be harmless error.  
Arman
, 131 Ill. 2d at 126.  The court held that, despite the occurrence of constitutional error at the trial, a defendant’s conviction may be affirmed if the reviewing court concludes, upon the entire record, that the error was harmless beyond a reasonable doubt.  
Arman
, 131 Ill. 2d at 127.  

In 
People v. Tate
, 45 Ill. 2d 540, 544-45 (1970), the prosecutor argued that the State’s evidence was uncontradicted and that the defendant had offered no explanation for his possession of a stolen car.  The supreme court held that, when read in the context of the entire trial record, any error occasioned by the prosecutor’s fleeting statement was harmless beyond a reasonable doubt.  See 
Tate
, 45 Ill. 2d at 545-46.  The jury had been correctly instructed that the State had the burden of proving the defendant guilty beyond a reasonable doubt, that this burden remained on the State throughout the case, and that the defendant was not required to prove his innocence.  
Tate
, 45 Ill. 2d at 546.  The supreme court concluded that the prosecutor’s comment could have had no effect on the jury’s verdict.  
Tate
, 45 Ill. 2d at 546.  Finally, I note that even the trial court, which presided over the entire trial, did not believe that defendant had been substantially prejudiced and deprived of a fair trial by the prosecutor’s comments in closing argument.  The trial court denied defendant’s motion for a mistrial and defendant’s posttrial motion for a judgment of acquittal or a new trial.  "The trial court has discretion to determine the proper character, scope[,] and prejudicial effect of closing arguments."  
Kliner
, 185 Ill. 2d at 151.  Indeed, the trial court is in the best position to determine the prejudicial effect of a remark made during closing argument, and therefore, absent a clear abuse of discretion, its ruling should be upheld.  
People v. Macri
, 185 Ill. 2d 1, 51 (1998).  In the instant case, the trial court determined that defendant was not sufficiently prejudiced by the prosecutor’s improper argument to warrant granting defendant’s motion for a mistrial.  While recognizing the prosecutor’s argument as being close to, if not over, the line of propriety, the trial court found that defendant’s objections and the court’s instruction to the jury to disregard the improper argument cured any error and rendered a mistrial unnecessary. 

Accordingly, for the foregoing reasons, I must dissent from the opinion and the decision of the majority.