**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240381-U

Order filed August 14, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-24-0381 Circuit No. 21-CF-2155 |
| | ) | |
| ANTHONY L. LANE, | ) ) | Honorable Ann Celine O'Hallaren Walsh |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE BRENNAN delivered the judgment of the court.
Justices Holdridge and Hettel concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:   The prosecutor's statements in closing argument did not constitute plain error.

¶ 2    Defendant, Anthony L. Lane, appeals from his conviction for aggravated criminal sexual assault. Defendant argues the prosecutor's improper comments during rebuttal closing argument deprived him of his right to a fair trial. We affirm.

¶ 3                                   I. BACKGROUND

¶ 4        Defendant was charged with, *inter alia*, aggravated criminal sexual assault (720 ILCS 5/11-1.30(a)(5) (West 2020)). The charge alleged that on November 22, 2021, defendant entered J.L.B.'s dwelling without authority and committed sexual assault by the use or threat of force against J.L.B., who was 60 years of age or older.

¶ 5        A jury trial began on January 8, 2024. The evidence established that J.L.B. was 92 years old. On November 22, 2021, J.L.B. drove herself home from her dialysis appointment arriving at approximately 6 p.m. While in her kitchen, she saw a man at the door. She tried to close the door, but the man pushed it open, causing J.L.B. to fall. She asked the man what he wanted. He said he wanted money. J.L.B. gave him $30. The man grabbed J.L.B and pushed her to the ground.

¶ 6        The man carried J.L.B. to her upstairs bedroom and taped her hands in front of her. The man removed J.L.B.'s clothing and touched J.L.B.'s vagina and anus. J.L.B. was unsure if the man used his tongue or penis. J.L.B. did not feel any penetration, but felt something "wet and loose," and rubbing "back and forth." J.L.B. kept her eyes closed throughout the assault. The man then left. After the assault, J.L.B. walked downstairs and called 911. The recording was played for the jury.

¶ 7        A neighbor of J.L.B. told the police he saw a suspicious vehicle earlier that day with damage to the front bumper and the license plate inside the vehicle. He had surveillance footage of the vehicle, which he showed police. The police located a vehicle matching the neighbor's description and surveillance footage. The vehicle was registered to defendant's wife.

¶ 8        During a police interview, defendant initially denied being at J.L.B.'s home. When confronted with evidence that defendant used J.L.B.'s credit or debit card at a gas station, defendant admitted he followed J.L.B. home from the dialysis clinic, taped her hands, and demanded money. Defendant denied sexually assaulting her.

¶ 9        A sexual assault examiner treated J.L.B. following the assault. J.L.B. had bruising on her hands, arms, chin, and neck. There was redness in her vaginal area and blood in the "vaginal vault." Use of a blacklight indicated there may have been "something foreign," in J.L.B.'s vaginal area. The examiner collected swabs from J.L.B.'s external genitalia, vagina, and legs. The swabs were a match for defendant's DNA.

¶ 10       Before closing arguments, the court informed the jury that closing arguments are not evidence. Defense counsel highlighted discrepancies and other issues in J.L.B.'s testimony. During rebuttal closing, the prosecutor stated,

> "You don't think a sexual assault occurred to her? We're going to ask the lady who's being ravaged in her bedroom why his stuff might not be working? We're going to ask her about penetration? She told you exactly what she could tell you that happened; the rubbing, the wetness, the injuries that are there. You guys can put together the facts. You guys can use all the other witnesses that backed up everything that [J.L.B.] said."

The prosecutor argued the DNA evidence supported the finding of guilt. Later, the prosecutor stated, "Look, the only one in this entire room that thinks this defendant is not guilty is the defendant. Everything backs it up. His own statement backs it up." The prosecutor continued to argue that defendant was lying about the sexual assault during the police interview and "admitted what he had to."

¶ 11       After the completion of the parties' arguments, the court again instructed the jury, "[n]either opening statements or closing arguments are evidence." The jury was also instructed "[o]nly you are the judges of the believability of the witnesses and the weight to be given to the

3

testimony of each of them." The jury found defendant guilty of aggravated criminal sexual assault. Defendant was sentenced to 58 years' imprisonment. This appeal followed.

¶ 12                                    II. ANALYSIS

¶ 13        On appeal, defendant argues improper statements made by the prosecutor during rebuttal closing argument deprived him of a fair trial. Specifically, defendant argues the prosecutor improperly expressed his personal opinion and invoked the integrity of the state's attorney's office by stating, (1) "You don't think a sexual assault occurred to her? We're going to ask the lady who's being ravaged in her bedroom why his stuff might not be working? We're going to ask her about penetration?" and (2) "Look, the only one in this entire room that thinks this defendant is not guilty is the defendant." Defendant forfeited this issue by failing to preserve it at the trial level. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). However, defendant urges us to review the matter under the second prong of the plain error doctrine. "[T]he plain-error doctrine bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence." *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005). The first step in applying the plain error doctrine is determining whether a clear or obvious error occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

¶ 14        "It is a basic principle of our criminal justice system that prosecutors owe defendants a duty of fairness." *People v. Derr*, 316 Ill. App. 3d 272, 275 (2000). "This duty extends throughout the trial and includes closing statements." *Id.* Prosecutors "must refrain from making improper, prejudicial comments and arguments." *People v. Hudson*, 157 Ill. 2d 401, 441 (1993). "[P]rosecutors have wide latitude in the content of their closing arguments." *People v. Evans*, 209 Ill. 2d 194, 225 (2004). "Closing arguments must be viewed in their entirety, and allegedly

4

erroneous arguments must be viewed in context." *People v. Ammons*, 2021 IL App (3d) 150743, ¶ 43.

¶ 15    " 'It is prejudicial error for the prosecutor to express personal beliefs or opinions, or invoke the integrity of the State's Attorney's office ***.' " *People v. Boling*, 2014 IL App (4th) 120634, ¶ 126 (quoting *People v. Lee*, 229 Ill. App. 3d 254, 260 (1992)). For a closing argument to constitute improper personal opinion, the prosecutor "must *explicitly* state that he is asserting his personal views, stating for example, 'this is my personal view.' " (Emphasis in original.) *People v. Pope*, 284 Ill. App. 3d 695, 707 (1996); see *People v. Emerson*, 122 Ill. 2d 411, 434-35 (1987) (use of " 'we know' " and " 'we heard' " was not improper when it commented on the evidence at trial and discussed the credibility of witnesses). Additionally, prosecutors cannot invoke the authority or integrity of the state's attorney's office for fear jurors will defer their judgment concerning defendant's guilt to the integrity and authority of the prosecutor. *People v. Wilson*, 199 Ill. App. 3d 792, 796 (1990); see *People v. Williams*, 2015 IL App (1st) 122745, ¶ 18 (the prosecutor improperly invoked the integrity of his office when "[t]he prosecutor told the jury that it could, in fact, believe [codefendant] because of some independent investigation into the veracity of [codefendant's] story that was not based on record evidence").

¶ 16    Here, when reviewed in context, the comments at issue were not personal opinion or an improper invocation of the integrity of the prosecutor's office. As stated above, the prosecutor's comments must be explicit, and does not amount to an improper argument "if the jury has to *infer* [what] the prosecutor is doing." (Emphasis in original.) *Pope*, 284 Ill. App. 3d at 707. Both of defendant's arguments rely on the *implication* of the argument to the jury, not the explicit language used. Moreover, with the first statement, the prosecutor was responding to defense counsel's argument that J.L.B.'s testimony was not credible and could not support a finding of guilt. The

prosecutor properly argued that even though J.L.B. could provide only limited information regarding the assault and assailant, the jury was provided overwhelming evidence of defendant's guilt, particularly the DNA evidence, and could "put together the facts."

¶ 17 With the second statement, the prosecutor was arguing that defendant believed he could escape culpability for the sexual assault by admitting only to robbing J.L.B. It was not meant to be taken literally and did not "convey[ ] to the jury that the trial judge and defense counsel also thought that defendant was guilty," as defendant argues. It was an isolated comment on defendant's lack of credibility and the strength of the evidence, which employed some "dramatic rhetorical flourish[ ]." *People v. Daniel*, 2014 IL App (1st) 121171, ¶ 36. There was no risk the jury would defer their judgment regarding defendant's guilt to the integrity of the prosecutor's office. Therefore, we cannot say that a clear or obvious error occurred.

¶ 18 Regardless, even if we assume error, defendant would not be entitled to relief. Defendant solely argues under the second prong of the plain error doctrine. The second prong of the plain error doctrine has been equated with structural error. *People v. Jackson*, 2022 IL 127256, ¶ 28. Structural errors are those which "erode the integrity of the judicial process and undermine the fairness of the defendant's trial." *Herron*, 215 Ill. 2d at 186. "An error is typically designated as structural only if it necessarily renders a criminal trial fundamentally unfair or an unreliable means of determining guilt or innocence." *People v. Thompson*, 238 Ill. 2d 598, 609 (2010). As our supreme court has noted, "comments in prosecutorial closing arguments will rarely constitute second-prong plain error because the vast majority of such comments generally do not undermine basic protections afforded to criminal defendants." *People v. Williams*, 2022 IL 126918, ¶ 56.

¶ 19 Here, the comments at issue were nowhere near so egregious that they threatened the integrity of the judicial process. See *People v. Bliefnick*, 2024 IL App (4th) 230707, ¶ 315. That is

particularly true given the jury instructions that arguments of the parties were not evidence and that the jury was the ultimate judge of the credibility of the witnesses. These instructions "ameliorated any possible prejudice" resulting from the comments. *People v. Gonzalez*, 388 Ill. App. 3d 566, 598 (2008).

¶ 20                                    III. CONCLUSION

¶ 21        For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 22        Affirmed.