**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 240402-U

Order filed February 27, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | Appeal No. 3-24-0402 Circuit No. 21-CF-87 |
| JAYDEN T. HARRIS, | ) ) | Honorable William S. Dickenson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BRENNAN delivered the judgment of the court.
Presiding Justice Hettel and Justice Peterson concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:   The State did not improperly comment on defendant's decision not to testify.

¶ 2     Defendant, Jayden T. Harris, appeals from his conviction for aggravated battery with a firearm. Defendant argues that counsel was ineffective for failing to object to the State's comments that amounted to "thinly-veiled references" to defendant's decision not to testify. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4 Defendant was charged with aggravated battery with a firearm (720 ILCS 5/12-3.05(e)(1) (West 2020)) for shooting Jamal Ford during an altercation on January 25, 2021. Defendant asserted the defense of self-defense and the matter proceeded to a jury trial on September 26, 2022. We recount the trial testimony necessary to address the issues raised on appeal.

¶ 5 Jamal testified that on January 25, 2021, he was at his home with his brother, Tyrese Ford. At approximately 1 a.m., they went to Tyrese's vehicle to smoke marijuana. Terry Davis was in the vehicle when Jamal and Tyrese arrived. Defendant and Antwonne Walsh drove a separate vehicle into the parking lot; they joined Tyrese, Jamal, and Davis in Tyrese's vehicle; and all five men smoked marijuana.

¶ 6 While in the vehicle, defendant handed a firearm to Tyrese. Tyrese returned the firearm to defendant. Davis exited the vehicle and walked through the back door of a house. Defendant then put the firearm to the back of Tyrese's head and told Tyrese to "Run them hundreds," which meant "Give me all your money." Defendant and Tyrese began to struggle. Jamal pulled defendant off Tyrese, and Tyrese exited the vehicle and ran away. Jamal punched defendant in the face, and defendant shot Jamal in the stomach. Jamal was hospitalized for approximately one year and required multiple surgeries for the injuries he sustained.

¶ 7 Tyrese testified that he was largely unable to recall the events on the date of the incident. Tyrese, however, had submitted to a police interview following the shooting, and portions of the interview were played for the jury. During the interview, Tyrese described smoking marijuana in the vehicle before being robbed by defendant who was armed. At trial, Tyrese acknowledged that he was not completely honest during his police interview.

2

¶ 8        Walsh testified for the defense that, before the shooting, Jamal and defendant had "a little confrontation," during which Jamal punched defendant multiple times. Defendant then shot Jamal. Walsh did not see Tyrese exit the vehicle prior to the shooting.

¶ 9        Defendant did not testify.

¶ 10        In its closing argument, the State informed the jury that it would receive an instruction as to the justified use of force, which stated that a person is justified in the use of force "if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another." The State argued, "When you go back to that jury room, consider did you hear evidence to that? When you are listening to closing arguments, did you hear evidence to convince you of that?"

¶ 11        Defense counsel argued that based on the location of the gunshot wound, Jamal was facing defendant for the purpose of grabbing the firearm and attacking defendant.

¶ 12        In rebuttal, the State argued, "[t]here was never ever any testimony that someone grabbed at a gun. Never ever did anyone on that stand in any way say that someone grabbed at that gun, so I don't know where counsel is getting that." The State further contended:

> "The jury instruction is going to tell you about initial aggressor, bringing the gun to that location at that time, taking the gun out, putting it to the head of somebody at that time. That's initial aggressor.
>
> And even if you weren't the initial aggressor, you can't do it unless you are, what, in danger to yourself of great bodily harm? Where was there one bit of testimony, any testimony at all, that he was in danger of great bodily harm? There was no testimony."

Counsel did not object to any of the above comments made by the State.

3

The jury was instructed that closing arguments were not evidence and "[t]he fact that the defendant did not testify must not be considered by you in any way in arriving at your verdict." The jury found defendant guilty and rejected his claim of self-defense. The court sentenced defendant to 13 years' imprisonment. Defendant appealed.

¶ 13                                    II. ANALYSIS

¶ 14        On appeal, defendant argues that counsel was ineffective for failing to object to the State's comments as they amounted to "thinly-veiled references" to defendant's decision not to testify. Alternatively, defendant argues the State's comments constitute plain error. Under the theory of ineffective assistance of counsel and the plain error doctrine, we first determine whether a clear or obvious error occurred. *People v. Jones*, 2020 IL App (4th) 190909, ¶ 179 ("Absent a clear or obvious error ***, neither the doctrine of plain error nor a theory of ineffective assistance affords any relief from the forfeiture."). Our standard of review under both theories is *de novo*. *People v. Yankaway*, 2025 IL 130207, ¶ 111; *People v. Johnson*, 2021 IL 126291, ¶ 52.

¶ 15        "It is a basic principle of our criminal justice system that prosecutors owe defendants a duty of fairness." *People v. Derr*, 316 Ill. App. 3d 272, 275 (2000). "This duty extends throughout the trial and includes closing statements." *Id.* "[P]rosecutors have wide latitude in the content of their closing arguments." *People v. Evans*, 209 Ill. 2d 194, 225 (2004). The State may comment on the evidence presented or reasonable inferences drawn therefrom, respond to comments made by defense counsel that invite response, and comment on the credibility of witnesses. *People v. Ammons*, 2021 IL App (3d) 150743, ¶ 43. "Closing arguments must be viewed in their entirety, and allegedly erroneous arguments must be viewed in context." *Id.*

¶ 16        Criminal defendants have a constitutional right not to testify. *People v. Madej*, 177 Ill. 2d 116, 145-46 (1997). "Allowing the jury to draw negative inferences from [a defendant's] exercise

4

of the privilege against self-incrimination would render the privilege meaningless." *People v. Bean*, 109 Ill. 2d 80, 97 (1985). Accordingly, the State must not comment, either directly or indirectly, on a defendant's failure to testify. *People v. Kliner*, 185 Ill. 2d 81, 156 (1998). The State may comment on what evidence is uncontradicted provided the comment "expresses no thought about who specifically—meaning the defendant—could have done the contradicting." *People v. Keene*, 169 Ill. 2d 1, 21 (1995). Whether witnesses apart from the defendant were present at the time of the incident is relevant in evaluating the propriety of the State's comments. *Id.* at 22; *People v. Mills*, 40 Ill. 2d 4, 9-10 (1968). Regardless of the other witnesses' actual testimony, what is important is that someone besides the defendant could have provided contradictory evidence. *Keene*, 169 Ill. 2d at 22.

¶ 17    Here, defendant argues that the State's comments were "thinly-veiled references" to defendant's decision not to testify. Specifically, defendant points to three comments: (1) "When you go back to that jury room, consider did you hear evidence to that? When you are listening to closing arguments, did you hear evidence to convince you of that?"; (2) "There was never ever any testimony that someone grabbed at a gun. Never ever did anyone on that stand in any way say that someone grabbed at that gun, so I don't know where counsel is getting that."; and (3) "Where was there one bit of testimony, any testimony at all, that he was in danger of great bodily harm? There was no testimony."

¶ 18    These comments did not amount to references to defendant's decision not to testify. Significantly, defendant was not the only source of testimony regarding the incident. The jury was presented with testimony from three individuals present in the vehicle at the time of the shooting. None of the witnesses testified that Jamal reached for defendant's firearm or otherwise seriously endangered defendant. Given this record, there is no reason to conclude that the jury interpreted

5

the State's statements as implicit references to defendant's decision not to testify. Instead, viewed in context, all three statements were fair comments on the lack of testimony to support the elements of defendant's self-defense claim.

¶ 19    Further, the State's closing rebuttal statements were in response to defense counsel's argument that the location of Jamal's injury indicated he was facing defendant to attack him or reach for the gun. In response, the State was permitted to highlight the absence of testimony that Jamal was reaching for the gun. See, *e.g.*, *Kliner*, 185 Ill. 2d at 154-57. Finally, we observe that the jury was instructed that the arguments of the parties were not evidence and that they should refrain from considering in any way defendant's decision not to testify in rendering their verdict.

¶ 20    In conclusion, the State's comments were not error, thus vitiating defendant's claims of ineffective assistance of counsel and plain error. See *Jones*, 2020 IL App (4th) 190909, ¶ 179.

¶ 21                              III. CONCLUSION

¶ 22    The judgment of the circuit court of Kankakee County is affirmed.

¶ 23    Affirmed.